Thomas Boese, as Receiver, etc., Respondent, v. William King et al., as Assignees, etc., Appellants.

A statute of New Jersey, entitled "an act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors," contains provisions, restrictive of the previously existing right of debtors, to make voluntary assignments for the benefit of creditors; to these is superadded a provision (§ 14) enabling a debtor to coerce his creditors either to discharge him from his debts on receiving a rateable dividend of his assets, or to relinquish or abandon all claim upon those assets. In an action brought to set aside an assignment made in New Jersey, *held*, that, conceding said provision is in the nature of a bankrupt law, and was suspended, upon and by the passage by Congress of the late bankrupt act, there was no such necessary connection between this and the preceding sections as to require that they should fall because of its becoming inoperative; and that as none of the other provisions were in conflict with the power conferred upon Congress, or with said bankrupt law, and were complete in themselves and not dependent upon the provisions, they were not affected by said law.

Also *held*, that even if the whole of said statute of New Jersey was suspended, the right of a debtor to make an equal distribution of his property among his creditors, by means of a voluntary assignment, still existed.

Also *held*, where an assignment, made in New Jersey, referred to said statute, that it could not be claimed, on behalf of the creditors, that the assignor presumed he would be entitled to the benefit of said provision, and being mistaken, that the assignment was void. First. Because it would be his right, not that of others, to avoid the instrument on that ground. Second. That the presumption was that the assignor knew the law, and so knew that the provision was inoperative.

*Boese* v. *Locke* (17 Hun, 270), reversed.

(Argued October 2, 1879; decided November 11, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court at Special Term. (Reported below, 17 Hun, 270.)

This action was brought by plaintiff, as receiver of the property of defendant Locke, to set aside an assignment made by him for the benefit of creditors.

On April 16, 1846, an act of the Legislature of the State of New Jersey was passed, entitled "An act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors." Section 1 provides that every assignment shall be made for the equal benefit of the creditors of the assignor, in proportion to their several demands, preferences being declared fraudulent and void. Section 2 provides that an inventory of the debtor's estate and a list of his creditors shall be annexed to the assignment. The other sections, with the exception of the 11th and 14th, prescribe the duties of the assignees, as to giving public notice of the assignment, exhibiting an inventory and valuation of the assigned estate, giving security for the faithful performance of the trust, advertising for creditors to present their claims, filing a list of creditors, declaring dividends, and rendering a final account, etc.

Section 11 prescribes the time within which creditors shall exhibit their claims or be barred of a dividend.

Section 14 is as follows :

"Nothing in this act shall be taken or understood as discharging said debtor or debtors from liabilities to their creditors who may not choose to exhibit their claims, either in regard to the persons of such debtors, or to any estate, real or personal, not assigned as aforesaid, but with respect to the creditors who shall come in under said assignment and exhibit their demands as aforesaid, for a dividend, they shall be wholly barred from having afterwards any action or suit at law or equity against such debtors, or their representatives, unless on the trial of such action or hearing in equity the said creditors shall prove fraud in the said debtor or debtors, with respect to the said assignment, or concealing his estate, real or personal, whether in possession, held in trust or otherwise."

On September 23, 1875, the defendant, Locke, then a resident of New Jersey, made and delivered to the defendants, King, Goetchius and Poor, a voluntary assignment for the equal benefit of all his creditors. The trust is as follows :

"In trust to take possession of and collect, and to sell. and dispose of the same, at public or private sale, in their· discretion, and to distribute the proceeds to and among the: creditors of the said William H. Locke, in proportion to their several just demands, pursuant to the statute in such case made and provided."

This assignment the court found "was executed and delivered by the defendant, Locke, and accepted by the. other defendants in good faith, and without any intent to· hinder, delay or defraud the creditors of the said Locke, or any of them, but with the intent, *bona fide*, to make an equal distribution of the proceeds of the assigned estate among· the creditors of said Locke, in conformity to the require-- ments" of the statute in relation to assignments above referred to.

The court also found that "all the assigned property· which came into the hands of the assignees, under said. assignment, was in the State of New Jersey, and was con-- verted by them into money in that State, and afterwards: the money, being the proceeds of the assigned property, was, for the convenience of the assignees, deposited in a bank. in New York city."

Certain creditors of Locke in the State of New York: recovered judgment against him, and in proceedings supple- mentary to execution plaintiff was appointed receiver.

*M. W. Divine*, for appellants. The assignment at bar is; a voluntary assignment for the benefit of creditors, and is. not affected by the United States bankrupt act. (*Mayer* v. *Hellman*, 91 U. S., 496; *Thrasher* v. *Bentley*, 59 N. Y., 649; 1 Abb. [N. C.], 39; *In re Hawkins*, 34 Conn., 548; *Shepardson's Appeal*, 36 id., 23; *Maltby* v. *Hotchkiss*, 38. id., 80; *Beck* v. *Parker*, 65 Penn., 262; *Von Hein* v. *Elkins*, 15 B. R., 195; *Cook* v. *Rodgers*, 31 Mich., 391; *Reed* v.. *Taylor*, 32 Iowa, 209; *Sedgwick* v. *Place*, 1 B. R., 204; *Langley* v. *Perry*, 2 id., 596 [810]; *Haas* v. *O'Brien*, 66 N. Y., 597.) Even if the assignment were in violation of the:

provisions of the United States bankrupt act, it could only be attacked by an assignee in bankruptcy within six months after its execution. (*Seaman* v. *Stoughton*, 3 Barb. Chy., 344; *Williams* v. *Pitts*, 55 How. Pr., 331; *Geery's Appeal*, 43 Conn., 289; *Maltby* v. *Hotchkiss*, 38 id., 80; *Reed* v. *Taylor*, 32 Iowa, 209; *Reed* v. *McIntyre*, 19 N. B. R., October, 1878; *Cragin* v. *Thompson*, 12 id., 81.) If any portion of the New Jersey statute be in conflict with the bankrupt act, only that portion is suspended. The remainder of the statute is not affected. (Sedg. on Cons. of Stat. and Const. Laws, 413*a* ; *Fisher* v. *McGirr*, 1 Gray, 22; *Matter of De Vancere*, 31 How. Pr., 289; *Bank of Middletown* v. *Dudley*, 2 Peters, 526; *Phillips* v. *New York*, 1 Hilt., 483; *Comm.* v. *Kimball*, 24 Pick., 361.) The act in question, even if it be treated as an insolvent or bankrupt law, is not superseded or suspended by the United States bankrupt act until the two laws come into practical conflict. (*Gerry's Appeal from Probate*, 43 Conn., 289; *Ex parte Ziegenfuss*, 24 N. C., 463; *Reed* v. *Taylor*, 32 Iowa, 207; *Maltby* v. *Hotchkiss*, 38 Conn., 80; *Sturges* v. *Crowninshield*, 4 Wheat., 122; *Ogden* v. *Saunders*, 12 id., 213, 275–278; 2 Stats. at Large, 36, § 61; *Federalist*, 477 [ed. of 1842], introductory notes to the amendments.) The assignment in question is not fraudulent or void by the laws of this State. (*Ockerman* v. *Cross*, 54 N. Y., 29; *Livermore* v. *Jenckes*, 21 How. [U. S.], 126; *Pond* v. *Cooke*, 45 Conn., 126; *Frazier* v. *Fredericks*, 24 N. J. [Z], 166; Burrill on Assignments, § 302; *Parsons* v. *Lyman*, 20 N. Y., 112; *Holmes* v. *Remsen*, 4 J. Chy., 486; *Bentley* v. *Whittemore*, 4 C. E. Green [19 N. J. Eq.], 462.) The condition requiring creditors to exhibit their demands to the assignees within a specified time is not in conflict with the law of this State. (*Ward* v. *Tingley*, 4 Sandf. Chy., 476; *Parsons* v. *Lyman*, 20 N. Y., 103; *Pond* v. *Cooke*, 45 Conn., 126.)

*C. Bainbridge Smith*, for respondent. The bankrupt law of the United States, upon going into operation, suspended

all action upon future cases arising under the State insolvent laws; and all proceedings under the latter, while such bankrupt law exists, are null and void. (*Griswold* v. *Pratt*, 9 Metc., 16; *Judd* v. *Ives*, 4 id., 400; *Ex parte Eames*, 2 Story, 322; S. C., 1 N. Y. Leg. Observer, 212; *In re Holmes*, id., 211; S. C., 5 Law R., 360; *Shears* v. *Solinger*, 10 Abb. [N. S.], 287; *Van Nostrand* v. *Carr*, 30 Md., 128; *Martin* v. *Berry*, 37 Calf., 208; *Comm.* v. *O'Hara*, 6 Am. L. Rev., 765; *Day* v. *Bardwell*, 97 Mass., 246; *In re Reynolds*, 8 R. I., 485; *Chamberlin* v. *Perkins*, 51 N. H., 336; *Rowe* v. *Page*, 54 id., 190, 194; *Mayer* v. *Hellman*, 1 Otto, 496; *Sturgess* v. *Crowninshield*, 4 Wheat., 122; *Ogden* v. *Saunders*, 12 id., 496; Bump's Bankrupt Law [10th ed.], 30–34.) The statute of New Jersey under which the assignment in question was executed is both an insolvent and a bankrupt law. (Burrill's Law Dict., title "Bankrupt Law ; " Burrill's Law Dict., title "Insolvent ; " Bouv. Law Dict., title "Bankruptcy ; " Bishop on Insolvent Debtors, 3; 2 Steph. Com., 189–193; *Wilson* v. *Day*, 2 Burr., 829; 1 Dana Abridg., 317; *Sackett* v. *Andross*, 5 Hill, 331–341, 348; *Murray* v. *De Rottenham*, 6 J. C. R., 52, 64; *Adams* v. *Story*, 1 Paine's C. C. R., 79; *Blancard* v. *Russell*, 13 Mass., 4; *Sturgess* v. *Crowninshield*, 4 Wheat., 122; 2 Story on Const., § 1111; *Nelson* v. *Carland*, 1 How. [U. S.], 265; *In re Reynolds*, 8 R. I., 485; 2 Story on Const., § 1114, and cases cited; *Boyle* v. *Zacharie*, 6 Peters, 348, 635.) The bankrupt act of the United States suspends all future action upon the State insolvent laws, and all proceedings under the latter, while the bankrupt act exists, are null and void. (*Griswold* v. *Pratt*, 9 Metc., 16; *Day* v. *Bardwell*, 97 Mass., 246; *Van Nostrand* v. *Carr*, 30 Md., 128; *In re Reynolds*, 8 R. I., 485; *Ogden* v. *Saunders*, 12 Wheat., 213; *Ex parte Eames*, 2 Story, 322; S. C., 1 Leg. Obs., 212.) The insolvent law of a State, while the bankrupt act of the United States is in force, is like an act of the Legislature which has been declared unconstitutional, it is a nullity, and all proceedings under it are void.

(*White* v. *Cannon*, 6 Wall., 443, 450; *Kimberly* v. *Ely*, 6 Pick., 440, 454; Segwick on Const. Stats. [2d ed.], 554.) The assignment in question was made under and pursuant to an insolvent or bankrupt law which was suspended by operation of the United States bankrupt act, and the assignment and all proceedings under it are unauthorized and void. (*Hawkins' Appeal*, 34 Conn., 548, 551; *Palen* v. *Johnston*, 50 N. Y., 49; *Van Hein* v. *Elkins*, 8 Hun, 519; *Fairchild* v. *Gwynne*, 16 Abb., 23; *Hardman* v. *Bowen*, 39 N. Y., 196; *Britton* v. *Lorentz*, 45 id., 51; Burrill on Assignments [3d ed.], 237–256; *Ingraham* v. *Wheeler*, 6 Conn., 277; *Jessup* v. *Hulse*, 21 N. Y., 168, 170, 171; Bishop on Insolvent Debtors, 83, 84; *Griswold* v. *Pratt*, 9 Met., 16; *Rowe* v. *Page*, 54 N. H., 190, 194; *Shyrock* v. *Boshore*, 13 Nat. B. R., 481.) The general rule is that whenever the constitution confers upon Congress the power of legislation upon a subject, and this power is exercised, the State laws upon the same subject are suspended. (*Shears* v. *Solinger*, 10 Abb. [N. S.], 287; *Henderson* v. *Spofford*, 59 N. Y., 131; *People* v. *Brooks*, 4 Den., 469; *Smith* v. *Turner*, 7 How. [U. S.], 395; *Sturgess* v. *Spofford*, 45 N. Y., 446; *Holmes* v. *Johnson*, 14 Pet., 570, 574.)

Rapallo, J. There is much force in the argument that the fourteenth section of the statute of New Jersey is in the nature of a bankrupt law. It enables a debtor to coerce his creditors to discharge him from his debts on receiving a rateable dividend of his existing assets; the only alternative being to relinquish or abandon all claim upon those assets.

Assuming therefore that this provision is in the nature of a bankrupt law, and that the exercise by Congress of the power to establish " uniform laws on the subject of bankruptcies throughout the United States," *ipso facto* suspended the operation of the provision above referred to, the question arises whether the residue of the New Jersey statute was affected, or whether it continued operative.

The object of the statute as expressed in its title was " to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors." It prohibits preferences, requires an inventory of the debtor's property and a list of his creditors to be annexed ; requires the assignee to give security for the faithful performance of his trust, and prescribes his duties in giving notice of the assignment, advertising for claims, declaring dividends, etc., etc.

To these provisions is superadded the fourteenth section, which relates wholly to the effect upon the debtor's claim, of accepting a dividend. We are of opinion that there is no such necessary connection between this section and the other provisions of the act, as to require that they should fall because of that section becoming inoperative. The act does not create the right to make voluntary assignments, but is restrictive of a previously existing right to make them, and throws salutary safe guards around the exercise of that right, and in those respects is intended for the protection of creditors. None of those provisions come in any way in conflict with the power conferred upon Congress, nor with the bankrupt law, and they are complete in themselves and in no way dependent upon the fourteenth section, which attempts to provide for the discharge of the debtor from his debts. The fourteenth section is a distinct and independent provision for the benefit of the debtor. If this provision was superseded by the bankrupt law, the consequence was that an insolvent debtor who, during the existence of that law, sought a discharge from his debts, must for the purpose of attaining that object, have had recourse to proceedings in bankruptcy. But a debtor who sought simply to obtain an equal distribution of his property among his creditors, was at liberty to do so by means of a voluntary assignment. The right to make such assignments was not affected by the bankrupt law, but continued in full force, as well in States where there were statutory regulations on the subject, as in States where there were none.

Even if the whole of the New Jersey statute had been suspended, the right to make a voluntary assignment would still have existed; but we do not think that there was any suspension, unless it be of the fourteenth section, and that after the passage of the bankrupt law, a debtor making an assignment in New Jersey was still bound to observe the conditions imposed by that act. If the right to make the assignment had been created by the act, different considerations might enter into the question, and it might be argued that the fourteenth section was an essential part of the system and scheme of the act, the destruction of which would invalidate the whole act. It is by no means clear that even in the case supposed this argument could be maintained. But such not being the case, the suspension of the fourteenth section affords no ground for holding that the restrictions and safeguards thrown by the body of the act around the right of debtors to make voluntary assignments, should be dispensed with, and debtors left at liberty to exercise that right without restriction or regulation.

If, in the assignment now in question, no reference had been made to the New Jersey statute, it could hardly be pretended that the assignment was assailable. It would stand as valid at common law, even if there were no such statute. But it is claimed that the words of the trust " to distribute the proceeds to and among the creditors of the said William H. Locke in proportion to their several just demands pursuant to the statute in such case made and provided " indicate that the assignment was made under the statute, and that the statute being suspended the assignment must fall.

This has already been answered by our conclusion that the whole statute was not suspended, and that those parts of it which regulate the form of the assignment and the conduct of the assignee, remained in force. The reference to the statute was therefore appropriate. But it is further claimed, and held in the opinion at Special Term, that this reference to the statute shows that the assignor presumed that he would be entitled to the benefit of the provisions of the

fourteenth section, and being mistaken in that, the deed is void.

It does not appear that the assignor has ever claimed to avoid the assignment on that ground, and we apprehend that it would be his right, and not that of third parties, to do so. But we do not think the ground tenable by any one. If the 14th section was inoperative, it was by reason of the provisions of the Constitution of the United States and of the act of Congress, and of these every citizen is bound to take notice. The legal presumption is, not that the assignor executed the instrument in ignorance of the law, but that knowing the law, and knowing that he would not be discharged, and desiring simply to secure an equal distribution of his property and to prevent any creditor from obtaining an unjust preference, he elected to effect this end by means of a voluntary assignment, by which his property would be distributed by an assignee of his own selection, under the State law, rather than to have it administered by a court of bankruptcy. That he had the right so to do, has been adjudged both by this court and by the Supreme Court of the United States. (*Thrasher* v. *Bentley*, 59 N. Y., 649; *Haas* v. *O'Brien*, 66 id., 597; *Mayer* v. *Hellman*, 91 U. S., 496.)

The judgment of the Special and General Terms should be reversed, and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.