CHARLES J. KETCHAM, TRUSTEE, v. THOMAS J. McNA-
MARA ET AL.

Third Judicial District, Bridgeport, April Term, 1900. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A trustee in insolvency appointed by a Court of Probate in voluntary
proceedings begun after the United States Bankruptcy Act of 1898
had gone fully into effect, sought to set aside a conveyance of prop-
erty made by the insolvent in actual fraud of his creditors. No ac-
tion under the Bankrupt Act had been taken either by the insolvent
or his creditors. *Held* that the proceedings in the Court of Pro-
bate could not avail to support the action.

Whether a creditor who had voluntarily assented to or participated in
the insolvency proceedings in the State court would be estopped
from afterwards denying their validity, or from bringing a peti-
tion in involuntary bankruptcy, *quære*.

The case of *Hawkins' Appeal*, 34 Conn. 548, distinguished.

Submitted on briefs April 18th—decided May 1st, 1900.

ACTION by a trustee in insolvency to recover personal prop-
erty fraudulently transferred by the insolvent debtor, and
also for damages, brought to the Court of Common Pleas in
Fairfield County and reserved by that court, *Curtis, J.*, upon
a demurrer to a plea in abatement, for the consideration and
advice of this court. *Judgment overruling demurrer advised.*

The plea in abatement alleged that the plaintiff was ap-
pointed trustee by the Court of Probate for the district of
Bridgeport, in proceedings which were begun in October,
1899, and that on and ever since July 1st, 1898, there had
been in force a bankrupt law of the United States. The
demurrer to this plea proceeded upon the ground that it did
not allege that the insolvent had ever been declared a bank-
rupt under said bankruptcy law.

*Edwin F. Hall*, for the plaintiff.

*John Cullinan, Jr.*, and *John J. Corr*, for the defendants.

BALDWIN, J. The complaint in this action alleges that

on or about August 1st, 1899, one Martin H. Kelly, being and knowing that he was then insolvent, for the purpose of defrauding his creditors, transferred certain goods, constituting all his property, to the defendants, who received them with full knowledge of the fraud; and further, that on October 16th, 1899, he (having then no other property than that so held by the defendants) made an assignment in insolvency to the plaintiff, as trustee, who was thereafter duly confirmed as such trustee in insolvency by the Court of Probate having jurisdiction of the parties.

Each of these transfers, under the express terms of § 3 of the " Act to establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898, was an " act of bankruptcy," by reason of which Kelly could have been adjudged a bankrupt on a petition filed within four months after such conveyance. This action was instituted prior to the expiration of four months from the first transfer.

The fundamental question to be determined is whether the title on which the plaintiff founds his suit is absolutely void, or merely voidable should proceedings in bankruptcy be seasonably instituted in the District Court of the United States.

It is a title of a peculiar character. He first acquired an interest in the property by a voluntary conveyance from the owner, good at common law. The laws of this State, however, to which such conveyances were subject, provided that unless lodged for record in the Court of Probate, they should be void; that, when so lodged, certain judicial proceedings should be had, resulting either in the approval of the trustee named by the assignor, or in the appointment of another trustee by the court; that the administration of the trust thereafter should be under the order of the court, acting as a court of insolvency; and that, should the estate suffice to pay seventy per cent on all claims proved and allowed, the assignor should be entitled to a discharge from all claims proved, and an exemption of his property for two years from legal process founded on any claim which might have been proved, an exception being made as to claims arising out of

fraud or breach of trust. Similar proceedings might be had at the suit of creditors, and upon either the filing of a petition for that purpose or of a voluntary assignment, all transfers by the debtor made within sixty days previously, in failing circumstances, by way of preference, became voidable by the trustee in insolvency. General Statutes, Chapter 52; *Greenthal* v. *Lincoln, Seyms & Co.*, 67 Conn. 372, 376.

These statutes constitute, in the fullest sense, an insolvent law. They make the title under a general assignment executed by an insolvent debtor in trust for the benefit of all his creditors, which is lodged for record in the Court of Probate, only an inchoate one. To perfect it requires a judgment of confirmation from that court. Nor, when perfected, is the estate assigned to be applied as directed by the terms of the conveyance. Creditors do not share equally. Certain claims for the wages of labor may be preferred. They do not take all the estate. An allowance may be made to the assigning debtor for his support and that of his family.

When the conveyance to the plaintiff was executed, there was nothing to which the creditors of the assignor could look for payment except the property which he had, more than sixty days before, transferred to the defendants by way of preference. He could not, himself, impeach this transaction, nor could any one claiming under him by a voluntary conveyance at common law. He could, however, invoke the aid of a proper court to redress the wrong he had done to his creditors, by investing some one else with the right to sue on their behalf. He could do this by instituting proceedings in bankruptcy, in the District Court of the United States; and that this way was open to him proved that no other could be.

The Constitution of the United States gives Congress power to establish uniform laws on the subject of bankruptcies throughout the United States. At the date of the assignment to the plaintiff such laws had been established. They covered, so far as respects the rights of the parties to the case at bar, the same field previously occupied by the insolvent laws of this State, and consequently they superseded

them.  *Harbaugh* v. *Costello*, 184 Ill. 110, 56 Northeastern Rep. 363.

The present bankrupt law differs from that of 1867 in its mode of treating assignments for the benefit of creditors, made without preferences prior to the institution of bankruptcy proceedings. The Act of 1898 declares every assignment of that kind an act of bankruptcy. *West Co.* v. *Lea*, 174 U. S. 590. Under that of 1867 (as amended in 1868, U. S. Rev. Stat. §§ 5021, 5046, 5128), it was such only if made in fraud of creditors, and the assignee in bankruptcy could not recover the property without proof that the person so receiving it had reasonable cause to believe that a fraud on the Act was intended. While the law stood thus, we therefore held that an honest conveyance by an insolvent debtor under our insolvent laws, without actual fraud, and with no actual intent to defeat the operation of the Act of Congress, could not be treated as absolutely void. *Hawkins' Appeal*, 34 Conn. 548, 551. The claim that it was such was set up in that case by one of the general creditors, but apparently only because, if sustained, it would prevent the assignment from operating as a dissolution of an attachment which he had previously made, and thus work a preference in his favor. Such a result the court was indisposed to promote by a construction of the bankruptcy law which would frustrate its main purpose. *Reed* v. *McIntyre*, 98 U. S. 507, 513.

The Supreme Court of the United States, in another case where the equities were of a similar character, held that if the Act of 1867 *ipso facto* suspended the operation of the insolvent laws of the States, general assignments under those laws, not followed by bankruptcy proceedings, when made with no actual intent to defraud, were not so absolutely void that a judgment creditor of an assignor could hold the assignee to account for the proceeds of the property. *Boese* v. *King*, 108 U. S. 379, 385, 386, affirming s. c. 78 N. Y. 471. Four of the justices, however, dissented from this opinion, holding that the State law had been totally suspended, and that all proceedings under it were therefore necessarily void.

The Act of 1898 also differs from that of 1867 in that it makes direct reference to its effect upon State insolvent laws. Its concluding provision is that "proceedings commenced under State insolvency laws before the passage of this Act shall not be affected by it." The necessary implication is that any such proceedings commenced after the passage of the Act are affected by it. *Parmenter Mfg. Co.* v. *Hamilton,* 172 Mass. 178, 51 Northeastern Rep. 529. We deemed it of considerable weight, in construing the Act of 1867, that it contained no provision purporting to repeal the State insolvency laws. *Maltbie* v. *Hotchkiss,* 38 Conn. 80, 83; *Geery's Appeal,* 43 id. 289, 302.

If there be any case in which proceedings under such statutes can be affected by the bankrupt law otherwise than by being precluded by it, it is not one like that now before us in which a trustee in insolvency, acting under the State law, seeks to avoid a preferential conveyance made by the debtor, when in failing circumstances, with actual intent to defraud his general creditors. His only right to maintain such an action comes from the decree by which he was appointed or confirmed. Congress has seen fit to provide a different means of impeaching such transactions, and one that leads to different results, both as to the debtor and his creditors. That no resort to this means has ever been had is unimportant. It was, after four months from the passage of the Act, at latest, the only means that could be pursued to set aside fraudulent conveyances, which, like that in the case at bar, were thereafter executed.

Any different construction of the Act of Congress would often lead to frittering away insolvent estates in legal expenses. One creditor would resort to the State insolvent court. Another, later, would institute bankruptcy proceedings in the District Court of the United States. Costs would accrue in each tribunal, and in suits brought under the orders of each. Creditors proving claims in the State court would have to present them again in that of the United States, and yet the proceedings there, if taken more than four months after the act of bankruptcy, might result in nothing but a

barren decree, adjudicating the debtor, indeed, a bankrupt, but affording no means of reclaiming property which he had previously made way with or placed in the hands of a trustee in insolvency.

The case at bar does not call for an inquiry into the effect of a voluntary assent by a creditor to proceedings in insolvency before a State court, whether expressed, or implied from his participation in them, when set up as estopping him from afterwards denying their validity, or from bringing a petition in involuntary bankruptcy. See *Davis* v. *Bohle,* 34 C. C. App. 372, 375; *In re Gutwillig,* ibid. 377, 378; *In re Curtis,* 36 id. 430; *Leidigh Carriage Co.* v. *Stengel,* 37 id. 210, 218; *Simonson* v. *Sinsheimer,* ibid. 337, 344.

The plaintiff urges that his suit is supported by the authority of *Mayer* v. *Hellman,* 91 U. S. 496, but, as stated in the opinion in that case, the State law there brought in question was "not an insolvent law in any proper sense of the term." We took the same view of our own statute of 1828, in *Strong* v. *Carrier,* 17 Conn. 319, 331. Our present law as to insolvency proceedings is a radically different one.

The Court of Common Pleas is advised to overrule the demurrer to the plea in abatement.

In this opinion the other judges concurred.