### In re PURSELL.

(District Court, D. Connecticut. March 18, 1902.)

BANKRUPTCY—PRIOR PROCEEDINGS UNDER STATE INSOLVENT LAWS—EXAMINA-
TION OF TRUSTEE IN INSOLVENCY.

Under Bankruptcy Act, § 21, providing that a court of bankruptcy may require any designated person who is a competent witness under the laws of the state to appear to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under the act, a trustee in bankruptcy could require the examination of a trustee in insolvency appointed in Connecticut more than four months before the commencement of the bankruptcy proceedings, concerning the disposition made by him of the bankrupt's assets.

In Bankruptcy.

A. D. Penney, for the petitioners.

TOWNSEND, District Judge. The question raised herein concerns the power of a trustee in bankruptcy in regard to property assigned to a trustee in insolvency under the Connecticut Statutes more than four months before the commencement of proceedings in bankruptcy. The trustee in bankruptcy attempted to examine the trustee in insolvency as to the disposition of the assets. The trustee in insolvency under the state law filed a petition that all proceedings in regard to the assets in his hands as trustee be stayed and dismissed, and that all examinations regarding said matters should proceed no further.

The facts and the rulings of the referee thereon are stated by him as follows:

"Bankrupts made an assignment in insolvency in the probate court on March 9, 1900, and on March 16, 1900, Willis G. Braley was appointed and qualified as trustee in insolvency of their estate. October 25, 1900, Braley filed an account purporting to be a final account showing that the assets had been entirely consumed in the expenses and charges of the trustee, leaving nothing for the creditors. The hearing on this account has been continued from time to time in the probate court, and that court has never adjudicated upon it. June 18, 1901, the Pursells were adjudicated bankrupt in the United States court, and a trustee was thereafter appointed. The trustee in bankruptcy has summoned Braley to appear before the referee in bankruptcy for an examination as to the disposition of the assets received by him under the assignment in the probate court, and claims that Braley has failed to take part of the assets into his possession, and has sold part of them, through a third party, to himself, and disposed otherwise of part, for the benefit of his family. Braley insists that the probate court only has jurisdiction of his doings under the assignment, and that the district court has no right to examine him in regard to it.

"The main question here is whether a trustee in bankruptcy would have a right to recover judgment against Braley, if it should be found that he has not acted properly and in good faith in respect to the property assigned by the Pursells. A suit for this purpose can only be brought in the state court. Will the state court sustain such a suit? Several cases have been cited in which the proceeding in bankruptcy followed an assignment in a state court. But in each of them the proceedings in bankruptcy were instituted within four months of the assignment. In the present case they are instituted more than a year after. The effect of the United States bankrupt act of 1898 upon the operation of the state insolvent law was carefully considered by the supreme court of errors of Connecticut, its highest appellate court, in Ketcham v. McNamara, 72 Conn. 709. 46 Atl. 146. That was a suit brought by a trustee

in insolvency to set aside a conveyance made in actual fraud of creditors. The court holds that the insolvent law of Connecticut has been suspended by the United States bankrupt act. Referring to the suit by the trustee in insolvency, the court says (page 713, 72 Conn., and page 148, 46 Atl.): 'His only right to maintain such an action comes from the decree by which he was appointed or confirmed. Congress has seen fit to provide a different means of impeaching such transactions, and one that leads to different results, both as to the debtor and his creditors. That no resort to this means has ever been had is not important. It was, after four months from the passage of the act, at latest, the only means that could be pursued to set aside fraudulent conveyances, which, like that in the case at bar, were thereafter executed.' And the following language, although obiter, seems intended to express the opinion of the court upon the point in question: 'Any different construction of the act of congress would often lead to frittering away insolvent estates in legal expenses. One creditor would resort to the state insolvent court. Another, later, would institute bankruptcy proceedings in the district court of the United States. Costs would accrue in each tribunal, and in suits brought under orders of each. Creditors proving claims in the state court would have to present them again in that of the United States, and yet the proceedings there, if taken more than four months after the act of bankruptcy, might result in nothing more than a barren decree adjudicating the debtor, in deed, a bankrupt, but affording no means of reclaiming property which he had previously made way with or placed in the hands of a trustee in insolvency.' The last sentence quoted implies that under the construction of the act of congress adopted by the court, to wit, that the state law has been totally suspended, the trustee in bankruptcy may reclaim property which the bankrupt had previously placed in the hands of a trustee in insolvency, even though the proceedings in the state court were begun more than four months before the proceedings in the United States court. The motion of Braley is overruled, and the examination as to his disposition of the assets placed in his hands by the bankrupt will proceed."

The question is apparently a novel one. No precedents bearing directly upon it have been cited. The statement of the referee also shows that "most of the claims filed with the referee were proved before the commissioners and in the probate court, but ten of the claims filed with the referee, aggregating $591.30, were not so filed."

There is not, as yet, any attempt to set aside any conveyances made in good faith by the trustee in the probate court. Although the account of the trustee in that court was filed considerably more than a year ago, the court has never adjudicated upon it, and it seems most probable that in view of Ketcham v. McNamara, 72 Conn. 709, 46 Atl. 146, cited by the referee, it will proceed no further in the matter. Whether the creditors of the bankrupt can have any remedy in the state courts if the trustee has really abused his position is very doubtful.

It is not necessarily impossible that the property assigned to him may not have been of sufficient value to pay all the claims proved in the probate court, and leave a balance to be recovered by the trustee in bankruptcy. It seems probable that the highest courts in Connecticut would hold an attempt at an assignment in the probate court to be void, except in so far as those who have joined in it or assented to it are estopped from contesting it. If the probate court has jurisdiction, it was the duty of the trustee in insolvency to press the hearing of his account in that court to conclusion.

The bankruptcy law (section 21) provides that a court of bankruptcy may require any designated person who is a competent witness under

the laws of the state to appear to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under this act. The provisions of this section are apparently broad enough to cover the examination in question. The trustee in bankruptcy should be allowed to test his rights in the state court, and should be allowed to use all means which the bankrupt act places at his command for obtaining the information necessary for the purpose.

The decision of the referee is affirmed.