In re E. S. WHEELER & CO.

(District Court, D. Connecticut.   March 21, 1907.)

No. 1,145.

BANKRUPTCY—EXAMINATION OF WITNESS RESPECTING ACTS OR PROPERTY OF BANKRUPT—PRODUCTION OF DOCUMENTS.

On the examination of the president of a bank, under Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], with respect to the "acts, conduct or property" of a bankrupt corporation, in aid of a suit brought by the trustee against such bank, the witness cannot be compelled to produce a private memorandum book of his own, which contains nothing respecting transactions with the bankrupt except what has been transcribed from the books of the bank, and would be useful to the trustee only as an index or guide to facilitate the tracing of the transactions through such books.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 406.]

In Bankruptcy.   In re order of commitment for contempt.   On certificate from referee.

Seymour C. Loomis, for trustee.
John K. Beach, for respondents.

PLATT, District Judge.   It appears that a hearing was in progress before the referee, in which, under section 21a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]), Mr. Leete, president of the Mechanics' National Bank of New Haven, was being examined as to the doings of his bank so far as they affected the "acts, conduct or property" of the bankrupt.   The examination was conducted by the trustee of the estate to obtain, if possible, knowledge of facts which might guide him in the conduct of a suit in the state court, brought by him against said bank, in which it was alleged that on October 1, 1903, and long prior thereto, the present bankrupt was insolvent; that, from 1895 to 1903, said defendant bank had received from said the E. S. Wheeler & Co. (the present bankrupt) "at various times, sums aggregating $2,824.90, as a payment upon an indebtedness due from said Wheeler to said defendant"; that these payments "were made while the said E. S. Wheeler & Co. was insolvent, and in fraud of the rights of its creditors."

The complaint from which the foregoing quotations are taken was amended by filing a substituted complaint, which sounds in equity and is quite elaborate, but in the last analysis comes back to the same points, charging the defendant with taking certain sums in excess of 6 per cent. in an unusual way, when the defendant knew, or ought to have known, that said corporation was insolvent, and applying such

excess to the payment of an old personal indebtedness of Wheeler's to the defendant. The examination had disclosed facts which tended to prove that, during the time mentioned in the state court suit, the bank had discounted certain paper for the E. S. Wheeler & Co., upon which the corporation had paid, in addition to the regular 6 per cent. discount, a further sum of sometimes 1 and sometimes 2 per cent. discount, upon certain accounts receivable assigned as collateral, which extra amount was taken by the bank from the E. S. Wheeler & Co. and credited upon the old personal indebtedness of Mr. Wheeler. The amount of such credits was entered upon a certain demand note given by said Wheeler to the bank, and showed thereon as $2,896.07. Then this took place:

"By Mr. Loomis: Q. From what source did you obtain the aggregate amount of these payments? Ans. From some memorandums that I had. Q. Have you those with you? Ans. No, sir. Mr. Loomis: I would like those memorandums."

At a later hearing it appeared that the memoranda were in a book which the witness had placed in the hands of his counsel, Mr. Stoddard. The referee ordered the production of the book. The witness, of course, was subject to the views of his counsel, and Mr. Stoddard, although expressing due respect for the referee, preferred to take the ruling of the court on the matter, and so the matter is before me on the referee's certificate, suggesting that said Stoddard and Leete be committed for contempt in refusing to obey the referee's order.

The determining fact seems to be to know exactly what that memorandum book is, and how and why it was made. If it is a book of original entry belonging to the bank, and contains the only original evidence as to the various amounts which were deducted from accounts receivable assigned by E. S. Wheeler & Co. to the bank as collateral security upon its notes, then it is clearly a book which will furnish very important evidence bearing upon the "acts, conduct or property" of the bankrupt.

At the hearing before me, counsel for the trustee insisted that it is such a book, and that the referee so certifies, and that I am bound to accept the findings of fact made by the referee. The relation between the court and its referees is, I think, pretty well known throughout the district. It was my good furtune to find faithful, able, and conscientious men occupying the positions in the various counties when I came upon the bench. Their efforts have relieved me from many a weary hour. I have complimented them privately, and it is a pleasure once more to indorse them publicly. Mr. Newton presides over a very busy and important county, and is entitled to an exceptionally cordial indorsement, and the same is here placed in enduring form.

Now, let us hark back and discover, if we can, just what the facts are about that memorandum book. The referee certifies that:

"It appears, from the testimony of Mr. Leete, the memorandum book was in fact made by the president and cashier of the bank in the course of the bank's business, and that the entries were made from time to time, as the payments were made."

That is far short of saying that it is a book of original entry, and still farther short of saying that it is the only book of original entry;

,and, too, it is confined to what Mr. Leete had said, and omits entirely any reference to other testimony. Mr. Stoddard had the book, and knew what it was. He testified about it, and what he said comes to me in the certificate:

"Q. Mr. Stoddard, you have the memorandum book which Mr. Leete refers to?

"Ans. I have a memorandum book which shows the statement of account that is also shown on the books that you have examined and that have been examined by you—a compilation and personal account book of Mr. Leete's, where he has gotten the amounts together, instead of being separated and scattered through the books of the bank. It is a personal memorandum of Mr. Leete's. It does not belong to the bank. It was made by Mr. Leete personally, and was his personal property. And it was a memorandum, a mere mathematical computation, calculation. And it was one that, in my judgment, you are not entitled to have. You can get the same information from the books that you have, except that it will involve some work. I have got that book personally, and, until the court orders me to produce it, I am not going to produce it."

The book is, then, nothing more nor less than a convenient thing for the trustee to have in hand, if he desires to follow up each specific item of the credits made on Mr. Wheeler's personal indebtedness. But why should he follow them up? The details must appear on the books of the bankrupt, because in the suit brought in the state court the amount demanded is substantially the same as that disclosed by Mr. Leete on this examination. It is not possible to see what good purpose can be subserved by the production of this book. In a certain way it has to do with the acts, conduct, and property of the bankrupt, but certainly to no greater extent than has been stated, viz., to furnish a quick guide to certain facts which, so far as they are important, are already pretty well understood by the trustee. For such a paltry purpose it cannot be possible that such serious contention would have arisen. The trustee must expect more than is on the surface. If he hopes to find straws which may serve to show that Mr. Leete, as an officer of the bank, knew that the corporation was insolvent when the deal was on, it is my opinion that section 21a cannot be so construed as to furnish the basis for a right to do so. The party under examination may be without counsel, and the probing could go to an extent which would make the hearing look very much like the early inquisitions. In pursuit of the bankrupt's property, a large latitude should undoubtedly be permitted, but the case in hand goes much too far. What the bank knew about the bankrupt's financial condition is beyond the scope of an inquiry concerning the "acts, conduct or property" of the bankrupt. If we were authorized to examine the acts and conduct of the bank, it would be another story.

It must be evident, from what has been said, that the court does not think itself justified in taking any action looking toward the commitment of Messrs. Leete and Stoddard on the certificate, and that an attempt has been made to indicate, in a general way, what the future conduct of the parties in this matter ought to be.