AMERICAN RUG & CARPET CO., INC., Plaintiff, v. SOL HERMAN,
Defendant.

Municipal Court of New York, Borough of Manhattan, First District,
May 23, 1933.

*Ira M. Greene*, for the plaintiff.

*Sol M. Selig*, for the defendant.

LEWIS, DAVID C., J. Under date of the 11th of April, 1932, the defendant executed a document designated " Deed of Trust and Assignment to one William Budd DeLacey, as Trustee."

From this instrument we learn,

" WHEREAS, the debtor is indebted to divers persons in sundry sums of money, *which the debtor is unable to pay in full and is desirous of providing for the payment of the same by an assignment of all personal property and assets for that purpose,* now

" *Therefore,* the debtor in consideration of the premises * * * has granted, bargained, sold, etc. * * * unto the said trustee, all assets and property * * * except such property as exempt by law from levy and sale under execution,

" To have and to hold the same, in trust, however, to be administered in accordance with the terms of this agreement."

This document further provides that the trustee shall take the property and with all reasonable dispatch convert it into cash and " distribute the same in accordance with the terms hereof."

In another part the same instrument reads as follows: " The trustee hereby accepts the trust created and reposed in him by this instrument and covenants and agrees to and *with the debtor and the creditors of the debtor who may become* parties hereto that he will faithfully and without delay execute the said trust. * * *

" This agreement, together with any counterpart or copy thereof, *together with any writing signifying an acceptance thereof by any*

*creditor of the debtor*, shall be read and regarded as one instrument *and shall make any such creditor a party to this agreement."* (Italics mine.)

Thereafter and on or about the 18th of April, 1932, this plaintiff executed and filed its proof of claim (a printed form apparently supplied by the trustee), covering the debt which is the subject-matter of this litigation.

In this proof of claim we find the following language: " The *undersigned hereby agrees to the terms* of a certain agreement or deed of trust * * * made by the above named debtor to William Budd DeLacey, as trustee, *and agrees to accept the ratable distribution to be made pursuant thereto."* (Italics mine.)

It further appears undisputed that on or about June 28, 1932, the trustee sent the plaintiff his check to the plaintiff's order, in the sum of seven dollars and eighty-three cents, bearing the notation " Re Sol Herman, first and final dividend 7.42%," accompanied by a letter explaining the amount of the claim, the rate of dividend and the computation.

This check and letter were received by the plaintiff and retained by it and nothing further was done until this action was instituted (July 28, 1932).

No question is raised that the transfer to the trustee was made in good faith. Nor is it disputed that the plaintiff had notice and knowledge of the entire transaction and of all the terms; that it filed a verified proof of debt in order to participate in the *pro rata* distribution; that it received the check from the trustee constituting its *pro rata* share of the assets, marked " First and Final Dividend; " and that it still retains the said check.

Can the plaintiff side-step the fair import and legal sequence of its acts?

The omission of the trustee to follow out the requirements of the divers provisions of the debtor and creditor statute regulating general assignments is, at the most, an irregularity and works no fatal disturbance of the transaction. (*Matter of Feldman & Co., Inc.* [*Hirsch*], 237 App. Div. 720.)

If the papers and proof before the court spell an agreement between the defendant as the debtor with the plaintiff and other creditors, to accord and satisfy their respective cla ms on the stipulated basis, is there any dictate of law or equity that forbids such a transaction? Unless the law presents a barrier, this court is loath under existing conditions to erect one.

The deed of trust and assignment executed by the defendant constitutes a proposal of accord and satisfaction. The proof of claim executed and filed by the plaintiff subscribed to it.

If it did not deign to express its dissent, had the plaintiff elected, it could have stood pat. It had the choice. It decided to affirmatively join in the composition. It filed its proof and consent with the trustee; and it received and retained its *pro rata* dividend. How can it now renege?

" The law, equally with common fairness in dealing, obliges the creditor to abide by an arrangement thus made." (*Keeler* v. *Salisbury*, 33 N. Y. 648, 654.)

The plaintiff would construe the entire transaction as simply evincing its assent to the assignment, allowing it the right to a *pro rata* share in the assets, but leaving it free to immediately sue the defendant for the balance.

To accomplish such a purpose, neither the defendant, the trustee nor the other creditors needed this plaintiff's agreement. (*Brockton Shoe Mfg. Co.* v. *Schenkman*, 146 Misc. 119.)

Unless the plaintiff's consent and agreement is to be construed as its concurrence with the trustee and other creditors in this common plan to take a *pro rata* payment in full satisfaction, of what real avail could it ever prove to be?

It is plain that as a matter of fact the parties made and executed an accord and satisfaction.

And it is clear that as a matter of law the accord and satisfaction is valid and binding.

If the documentary evidence presented no words recording the express agreement on the part of the plaintiff to accept the *pro rata* distribution in full payment, the law would write an undertaking into this transaction by implication.

" The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation ' imperfectly expressed. (SCOTT, J., in *McCall Co.* v. *Wright*, 133 App. Div. 62; *Moran* v. *Standard Oil Co.*, 211 N. Y. 187, 198.) * * *

" Without an implied promise, the transaction cannot have such business ' efficacy as both parties must have intended that at all events it should have.' " (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91.)

One need not rely entirely on any implied assent and agreement of the plaintiff to the proposed accord and satisfaction. We have the express written consent and agreement of the plaintiff to it, followed up by performance and execution.

It did not need a depression to favor or sanction these adjustments. The law has long looked with favor upon them.

" ' Every composition deed, ' says Mr. Justice DUER, in *Breck* v.

*Cole* (4 Sandf. 79, 83), ' *is in its spirit*, if not in its terms, an agreement between the creditors themselves, as well as between them and the debtor. It is an agreement that each shall receive the sum or the security which the deed stipulates to be paid and given, and nothing more; and that, upon this consideration, the debtor shall be wholly discharged from all the debts then owing to the creditors who sign the deed.'" (Italics mine.) (*White* v. *Kuntz*, 107 N. Y. 518, 524.)

"And desiring simply to secure an equal distribution of his property and to prevent any creditor from obtaining an unjust preference, he elected to effect this end by means of a voluntary assignment, by which his property would be distributed by an assignee of his own selection, under the State law, rather than to have it administered by a court of bankruptcy. That he had the right so to do, has been adjudged both by this court and by the Supreme Court of the United States. (*Thrasher* v. *Bentley*, 59 N. Y. 649; *Haas* v. *O'Brien*, 66 id. 597; *Mayer* v. *Hellman*, 91 U. S. 496.)" (*Boese* v. *King*, 78 N. Y. 471, 479.)

"The defendants, for defense to this action, invoked the well-established principle that a creditor who is a party to a composition between a debtor and his creditors, *or who assents thereto*, is not permitted to make a secret reservation of a part of his claim, from the operation of the compromise, or stipulate for a secret advantage over the other creditors. The law exacts of all the parties to a composition *the most scrupulous good faith. It enforces a wholesome morality and inculcates the principles of honest and fair dealing, by defeating any advantage attempted to be gained,* either by working upon the necessities of the debtor, or by colluding with him. *It will not permit a part of debt withheld from the arrangement, to be enforced,* and it will compel the cancellation of securities, received in violation of the principle of equality. (*Russell* v. *Rogers*, 15 Wend. 351; *Leicester* v. *Rose*, 4 East, 372; *Alsager* v. *Spalding*, 4 Bing. N. C. 407; *Horton* v. *Riley*, 11 M. & W. 492.) The doctrine is based upon public policy, and the principles of commercial honor, and we should be very unwilling to weaken it by nice distinctions." (Italics mine.) (*Almon* v. *Hamilton*, 100 N. Y. 527, 532.)

"At common law an agreement between a debtor and more than one creditor, by which the creditors agree to discharge their claims in consideration of a partial payment, is valid; and upon performance the debtor is discharged. The rule is that if the promise to release be for a new consideration to be performed at a future day certain, then the original right of action is suspended until that day comes. If the promise is then duly performed the right is destroyed, but if the promise is not then duly performed the right revives and the promisee has his election to sue on the original

cause of action or on the new promise, unless, by the terms or the legal effect of the new contract, the new promise is itself a satisfaction and an extinction of the old one." (*Beck* v. *Witteman Bros., No. 1*, 185 App. Div. 643, at p. 645.)

"After the agreement was once made, neither party could withdraw from it without the consent of the debtor. * * *

"After the composition agreement was made, and so long as it remained in force, it was a substitution for and took the place of the original indebtedness, and the only claim plaintiff thereafter had against Kohner was upon the composition agreement." (*Chemical Nat. Bank of N. Y.* v. *Kohner*, 85 N. Y. 189, at pp. 194, 195.)

" So where a debtor assigns and delivers his property to trustees for the use of his creditors, under an agreement signed by the creditors whereby they accept the property in full satisfaction and discharge of their several demands, there is a valid accord and satisfaction, and the creditor who joins in the composition will be barred, although he refuses to accept his dividend from the assignee.. * * *

" Not even a majority, or any particular number more than two, need sign it to make it binding on all who sign it." (1 C. J. 547, § 57.) (See, also, *Second Nat. Bank* v. *Tachner*, 122 Misc. 681.)

It is the meaning established, not the means employed, that controls.

The legitimate mutual understanding of the parties is the common undertaking of the law. The law is the handmaid of lawful enterprise.

" It seems to me that the law cannot be too firm in insisting upon fair dealing between business men and their performance of all duties and obligations which they have assumed." (*Joannes Bros. Co.* v. *Czarnikow Rionda Co.*, 121 Misc. 474, at p. 480.)

The power to hold the plaintiff generated by his pact with others is augmented by the current of the law, and should not be judicially short-circuited. The spirit and intent of the parties is manifest in their acts. Their writings sought to give this intent and spirit legal form.

It remains for the court by its decree to give them life.

Judgment for the defendant.