## In re INSULL UTILITY INVESTMENTS, Inc.

District Court, S. D. New York.
Jan. 24, 1934.

888

Hines, Rearick, Dorr. & Hammond, of New York City (Charles H. Hamill, of Chicago, Ill., of counsel), for Harry A. Bigelow, as trustee in bankruptcy.

White & Case, of New York City, for Bankers Trust Co.

Larkin, Rathbone & Perry, of New York City (Donald C. Muhleman, Hersey Egginton, and Hovey C. Clark, all of New York City, of counsel), for Central Hanover Bank & Trust Co.

Chadbourne, Stanchfield & Levy, of New York City, for Commercial Nat. Bank & Trust Co. of New York.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (John W. Davis and Porter R. Chandler, both of New York City, of counsel), for Guaranty Trust Co. of New York.

Davies, Auerbach & Cornell, of New York City (Martin A. Schenck, of New York City, of counsel), for Irving Trust Co.

PATTERSON, District Judge.

Insull Utility Investments, Inc., was adjudicated bankrupt in the District Court for the Northern District of Illinois. An ancillary proceeding was instituted in this district, in the course of which an order was signed on motion of the trustee in bankruptcy for an examination under section 21a of the Bankruptcy Act, 11 U.S.C. A. § 44(a). The hearings were before a special master. Among the witnesses called by the trustee were persons connected with five New York banks. In the course of the hearings the special master sustained objections to certain questions put to these witnesses by the trustee and also sustained objections to the production of certain papers called for by the trustee. He has certified his rulings on these matters, and the question is whether the rulings were correct.

The attorney for the trustee explained to the special master the grounds for the questions. He stated that in pending suits the trustee was contending that pledges of certain stocks by the bankrupt to the banks as collateral security for loans were invalid; that the bankrupt had previously issued debentures and in them had covenanted not to borrow money when the borrowing would increase liabilities to more than 50% of the value of the assets; that the borrowings by the bankrupt from the banks were in breach of this covenant; and that the banks had notice both of the covenant and of the financial condition of the bankrupt when the loans were made. In line with this phase of the matter, the trustee sought to examine concerning the banks' notice of the terms of the debentures and their information as to the assets and liabilities of the bankrupt.

The attorney for the trustee further stated that payments on account of the loans had been made to the banks by the bankrupt while insolvent and within four months of bankruptcy. Some of the questions asked and papers demanded were to ascertain whether the banks at the time had reasonable cause to believe that these payments would effect a preference in their favor.

The trustee was permitted to question the witnesses as to dealings between the bankrupt and the banks, and to inspect all documents and correspondence which the banks had received from or sent to the bankrupt. He was also allowed to examine memoranda of conferences with officers of the bankrupt, as well as entries regarding transactions with the bankrupt. The banks apparently made no objection to furnishing such information. But the trustee was not satisfied. He demanded the production of reports and statistics concerning the bankrupt which representatives of the banks had compiled for their own use without consulting the bankrupt, of telegrams concerning the bankrupt which had been sent by an officer of one of the banks to an associate, of correspondence between a bank and other customers in which the bankrupt's affairs were discussed, of credit files collected by a bank from various outside sources and relating to the bankrupt's financial standing, and of other papers dealing with the bankrupt's affairs but not obtained from the bankrupt. He also wished to learn whether the banks had possession of debentures for the account of customers generally, as tending perhaps to establish knowledge or notice of the covenant restricting loans. To these further inquiries the banks interposed objections. The special master sustained the objections, on the ground that these matters did not relate to the "acts, conduct or property" of the bankrupt and were therefore not within the scope of an examination under section 21a. He drew a distinction based on the source or direct connection of the papers or other evidence. Items emanating from the bankrupt, memoranda kept of conferences with the bankrupt's officers, entries of transactions with the bankrupt were deemed proper matters of inquiry. Items not derived from direct contact with the bankrupt were held not proper matters of inquiry, even though they had or might have a bearing on what the banks knew or believed to be the facts as to the bankrupt's financial condition or engagements to other creditors.

■ In my opinion the distinction adhered to by the special master is unsound. The trustee was within his rights in insisting on the production of all papers in possession of the banks that tended to reveal

what information and belief they had as to the bankrupt's business, financial condition and covenants at the time of the transactions between them and the bankrupt. The same is true as to oral testimony tending to elicit the state of mind of the banks in respect to the bankrupt's business.

Section 21a provides: "A court of bankruptcy may * * * require any designated person * * * to appear in court * * * to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration."

One of the main purposes of the Bankruptcy Act being the collection and the distribution of a bankrupt's estate among his creditors, and the trustee being charged with the performance of this duty, it is the aim of section 21a to furnish the trustee with power to inquire summarily into the existence of assets that may be collected and distributed. In the search a wide range is given. In re Foerst, D.C., 93 F. 190; In re Horgan, 2 Cir., 98 F. 414; In re Wilcox, 2 Cir., 109 F. 628; In re Samuels, 2 Cir., 215 F. 845. It has been stated that in the examination of other persons the trustee should not have the same latitude as in the examination of the bankrupt (In re Carley, D.C., 106 F. 862); but that case cannot be recognized as sound. The prevailing view is that stated by Judge Denison in Ulmer v. United States, 6 Cir., 219 F. 641, 644: "* * * it is difficult to see why the examination concerning 'the acts, conduct and property of a bankrupt,' provided by [section] 21a [11 U.S.C.A. § 44(a)], is less broad in its scope than the examination of the bankrupt himself, provided by section 7 [11 U.S.C.A. § 25], concerning 'all matters which may affect the administration and settlement of his estate.' * * * Upon such examination no specific issue is or can be made up, but any fact or circumstance is relevant and material which fairly tends to establish something which may become important in the administration of the estate."

In his inquiry as to "property of a bankrupt", the trustee is not confined to efforts to uncover property owned by the bankrupt at the time of bankruptcy. He may elicit the facts as to property transferred by the bankrupt prior to bankruptcy, in an endeavor to find out whether it was fraudulently or preferentially transferred. Such property was once the property of the bankrupt and it may be assets of the bankrupt estate. In re Cliffe, D.C., 97 F. 540; In re Slocum, 2 Cir., 22 F.2d 282, 285. See also In re Foerst, supra; In re Pursell, D.C., 114 F. 371; In re Bogen, D.C., 19 F.2d 935. In re Elkus, Petitioner, 216 U.S. 115, 30 S.Ct. 377, 54 L.Ed. 407, the examination applied for was of officers of a corporation said to have received a preference from the bankrupt. The propriety of such an examination was apparently recognized, although the point directly decided was that the examination might be held in a court of ancillary jurisdiction.

In the present case the bankrupt had made transfers to the banks, first of stocks as collateral security to loans, and later of cash in partial payment of the loans. The trustee was within his right in interrogating the banks as to all matters bearing on the validity of these transactions. One of the matters affecting validity was the information that the banks had at the time of the transactions—how much they knew of the bankrupt's financial condition. Viewed narrowly, the state of mind of the other party to a transaction is not an "act" of the bankrupt, and the property inquired about is not the "property" of the bankrupt at the time of bankruptcy. In a broader view, the state of mind of the other party is a factor bearing upon and closely related to the "act" of the bankrupt in making the transfer, and it might be an important factor in ascertaining whether "property" formerly owned by the bankrupt might be recovered by the trustee. In re Wheeler & Co., 151 F. 542, the District Court of Connecticut seems to have taken the position that the knowledge of the transferee about the bankrupt's financial condition could not be the subject of inquiry in an examination under section 21a; but the case was reversed on appeal, 2 Cir., 158 F. 603. Under the Act of 1841, 5 Stat. 440, it was held that the trustee on general examination of a transferee could examine him concerning the state of his knowledge in regard to the bankrupt's affairs when the transfer was made. In re Danforth, Fed.Cas. No. 3,560. On principle the same is true under the Act of 1898.

It follows that the trustee was entitled under section 21a to probe fully as to what information the banks had bearing on the bankrupt's financial condition

at the time of the transactions between them and the bankrupt, and likewise as to what knowledge they had of any covenant limiting the bankrupt's right to borrow money. The source of the transferee's information or knowledge is not controlling with respect to the trustee's right to inquire or to see papers. If a witness who received a payment from the bankrupt within four months had before him at the time a letter from the bankrupt bearing on his financial condition and also a letter from a friend touching on the bankrupt's affairs, there is no reason why he must produce the one but need not produce the other. The trustee is entitled to see both. If the witness took pains contemporaneously to make notes of what he could find out bearing on the bankrupt's condition, the trustee may insist on seeing the notes too. I am of opinion that the special master erred in sustaining the objections against answering the questions and producing the papers involved in the items certified.

 The fact that suits are now pending between the trustee and the banks as to the validity of the pledges is of no consequence. In re Madero Bros., D.C., 256 F. 859; In re Nesbitt, 2 Cir., 282 F. 265. Similarly it is inconsequential that the trustee may have in mind bringing suits to recover the payments made within four months. In re Cliffe, supra; In re Horgan, supra. It need hardly be said that the rulings now made concerning testimony and exhibits in the examination under section 21a are not a precedent on the admissibility or the weight of these matters if offered in evidence later in suits against the banks. For example, I have no opinion one way or the other as to whether the mere possession of debentures by the banks through dealings with customers charges them with notice as to every clause in the debentures, nor have I considered whether notice to this effect should be given any legal significance.

 The special master has certified his rulings on another line of inquiry. Questions were asked of witnesses from two banks relative to claims against the bankrupt estate. It appeared in each instance that the bank had a connection of some sort with the person in whose name the claim was filed. The special master ruled that the trustee might inquire as to the ownership of the claim. These rulings were correct. See Ulmer v. United States, supra; In re Youroveta Home & Foreign Trade Co., 2 Cir., 288 F. 507.

The case will be remitted to the special master, with instructions to proceed in accordance with this opinion.