## BOTSFORD v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1914.)·

No. 2446.

1. POST OFFICE (§ 48*)—OFFENSES AGAINST POSTAL LAWS—MAILING NON-MAILABLE MATTER.

Pen. Code, §§ 211, 212 (Act March 4, 1909, c. 321, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, pp. 1651, 1652]), the former of which declares non-mailable every obscene, lewd, or lascivious picture, paper, or other publication of an indecent character and the latter "all matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which," any similar or libelous language or matter may be written or printed, are together designed to exclude from the mails all matter of such character, whether concealed from view by a non-offending cover or wrapper or displayed on a cover or wrapper. Such being the purpose of the statute, section 212 cannot be limited to include only an outside cover or wrapper inclosing mailable matter, but if the cover carries the objectionable matter, it is nonmailable whatever may be its contents, and separate counts in an indictment, charging with respect to the same package a violation of both sections, are not repugnant.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

2. CRIMINAL LAW (§ 1186*)—APPEAL AND ERROR—REVIEW—INDICTMENT CONTAINING SEVERAL COUNTS.

A general conviction and judgment cannot be reversed on error, where one of the counts or sets of counts in the indictment is good and warrants the judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219, 3221, 3230; Dec. Dig. § 1186.*]

3. POST OFFICE (§ 50*)—CRIMINAL PROSECUTION FOR MAILING NONMAILABLE MATTER—QUESTIONS FOR JURY.

In a criminal prosecution for violation of Pen. Code, § 211 (Act March 4, 1909, c. 321, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1651]), the question whether the matter contained in a newspaper mailed by defendant was obscene, lewd, lascivious, or indecedent *held* properly submitted to the jury by instructions which were free from prejudicial error.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Criminal prosecution by the United States against Allen Botsford. From a judgment of conviction, defendant brings error. Affirmed.

M. J. Heintz and Theodore Horstman, both of Cincinnati, Ohio, for plaintiff in error.

S. T. McPherson and E. P. Moulinier, both of Cincinnati, Ohio, for the United States.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. [1] Defendant below prosecutes error to a conviction and judgment rendered under an indictment, comprising 22

counts, charging him with violations of sections 211 and 212 of the United States Penal Code through wrongful use of the mails. The charges in substance were that he caused to be deposited in the Cincinnati post office, for mailing and delivery, certain nonmailable matter, to wit, 11 copies of a paper called "The Owl," dated Cincinnati, Ohio, July 27, 1912, each of which bore on its first page the name and address of the person to whom it was to be delivered. The publication, as respects each copy of the paper, was described in character and intent in two separate counts. A portion of the publication appeared on the first page, and the rest on the second page (i. e., inside) of the paper. The even-numbered counts relate to the whole publication, and the odd-numbered counts only to the part imposed on the first page; the former alleging offenses under section 211, and the latter under section 212. Concededly none of the copies of The Owl so mailed was inclosed within an envelope or wrapper. It is insisted by counsel for the prosecution that the first and last pages of the paper (comprising eight pages) constituted an "outside cover" within the meaning of section 212, and that the portion appearing on the first page was violative of that section. Counsel for defendant contest this, and urge that section 212 does not apply to an outside cover, or even to an envelope or wrapper, no matter what is displayed upon it, unless it incloses mailable matter; and, since the whole publication—that is, the part so appearing on the inside of the paper, as well as that on the outside—was alleged in the even-numbered counts to be nonmailable under section 211, one of two results followed: Either no offense was committed under the odd-numbered counts, or the odd and even series of counts were repugnant. Upon the claim of repugnancy the defendant moved, both before and after the evidence was introduced, that the government be required to elect upon which set of counts it would rely, the even-numbered or the odd-numbered. The motion so repeated was denied; and it is earnestly contended that this was error.

It is important now to have in mind the language of sections 211 and 212, and the relevant portions are quoted in the margin.[1] Counsel's theory of repugnancy is in effect that the publication was made to perform double service, which was self-contradictory; because, conceding for the sake of argument that the first and last pages constituted an "outside cover," the portion of the publication carried on the inside of the paper could not be both nonmailable under section 211 and

---

[1] Sec. 211: "Every obscene, lewd, or lascivious * * * picture, paper * * * or other publication of an indecent character * * * is hereby declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. * * *"

Sec. 212: "All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which, any delineations, epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, are hereby declared nonmailable matter, and shall not be conveyed in the mails nor delivered from any post office nor by any letter carrier, and shall be withdrawn from the mails under such regulations as the Postmaster General shall prescribe. * * *"

mailable under section 212. This is based upon counsel's view, as stated, that whatever may be displayed upon an outside cover it is not prohibited by section 212, unless the inside matter is "otherwise mailable by law." But if this view cannot be sustained, the claim of repugnancy cannot. Concededly sections 211 and 212 were intended to define distinct offenses. Broadly considered, and apart from mere definition of what is designed to be excluded from the mails, the first relates to forbidden matter which may or may not be concealed from view by any sort of nonoffending inclosure, and the second to forbidden matter displayed on an "envelope or outside cover or wrapper * * * or any postal card"; stated in another way, the one class of offenses may be said to be of a general nature and the other specific, as respects the mails, and the most obvious legislative purpose to be deduced from the language employed is that the two classes shall be treated as alike independent of each other and consistent. This will be more readily seen, we think, in the brief history of the legislation, appearing below.[2] From 1872 to 1888 the mailable character of envelopes was tested by what they displayed and not by what they contained. The reasons for this are apparent. It was not necessary to open and examine letters in order to ascertain whether the envelopes were mailable or not. Forbidden contents of a plain and sealed envelope were not easily detected; but this was not so as to evils arising from exposure of matter upon envelopes and other inclosures used in the mails. So in June, 1888, further legislation against this latter abuse was passed, embracing the "outside cover or wrapper" as well as the envelope, and defining as nonmailable and denouncing with penalties objectionable matter exposed thereon. This was done by separate act, commencing with the words "All matter otherwise mailable by law." We are disposed to believe that these words were used merely as a precautionary

[2] The first enactment upon this subject was passed in 1865 (13 Stat. 507, § 16), but envelopes or the like were not mentioned. In 1872, exposure of certain matter upon envelopes, but without regard to the mailable character of their contents, and also upon postal cards, was for the first time prohibited (17 Stat. 302, § 148): "That no obscene book, pamphlet, picture, print, or other publication of a vulgar or indecent character, or any letter upon the envelope of which, or postal card upon which scurrilous epithets may have been written or printed, or disloyal devices printed or engraved, shall be carried in the mail. * * *"

Section 148 was amended March 3, 1873 (17 Stat. 599); and on June 22, 1874, the section seems to have been carried into the revision as section 3893 (Rev. Stat. [2d Ed.] p. 758 [U. S. Comp. St. 1901, p. 2658]); but no change was at either of these dates made in respect to envelopes or postal cards. The next legislation of present importance was passed June 18, 1888, when the words "otherwise mailable by law" and "outside cover or wrapper" first appeared (25 Stat. 188): "And all matter otherwise mailable by law upon the envelope or outside cover or wrapper of which, or postal card, upon which indecent, lewd, lascivious, obscene, libelous, scurrilous, or threatening delineations, epithets, terms, or language, or reflecting injuriously upon the character or conduct of another, may be written or printed, are hereby declared to be nonmailable matter. * * *"

This act was amended September 26, 1888, and changed to the same form practically as that of section 212 of the present Penal Code (Id., p. 496), and section 3893 was at the same time amended so as to exclude its previous language concerning envelopes and postal cards (Id.); the section has since been enlarged, but in no respects material to the present case. See section 211, Penal Code.

measure against an interpretation that the inclusion of mailable, instead of nonmailable, matter within a forbidden envelope or the like, would escape the law. There was no more reason for Congress to concern itself about the contents of envelopes or outside covers or wrappers after this change in legislation than there was before.. Provision had been made by section 3893 against nonmailable matter concealed within an envelope, and this was in effect continued in the section after the exclusion therefrom of envelopes, and, indeed, is still maintained in section 211; it was therefore unnecessary to repeat the provision when seeking to remedy another and distinct evil by prohibiting the display of objectionable matter upon the "envelope or outside cover or wrapper," but since this display could be made regardless of the mailable character of the contents, it might well have been deemed necessary to denounce such display, even though the contents were mailable. If the words employed had been, "though otherwise mailable," the intent to make the display an offense, whether the contents were mailable or not, would have been indisputable; but it is not necessary to add the word "though"—mere emphasis of the word "otherwise" will fairly disclose the same intent, and, indeed, in the light of the history of this legislation, any ordinary and attentive reading of the words "otherwise mailable" leads to the same end. This derives support from the obvious intent disclosed by the use of the term "postal card," with which the words "envelope or outside cover or wrapper" are associated. Every law must be given a sensible construction (United States v. Kirby, 74 U. S. [7 Wall.] 482, 486, 19 L. Ed. 278); and it is unreasonable to suppose that inclosed matter, whether harmless or offensive, would be regarded as mailable in a forbidden envelope, outside cover or wrapper. Further, if the words "otherwise mailable" are to be narrowly interpreted, the object of section 212, except as to postal cards, could be wholly defeated simply by placing nonmailable matter within an envelope, outside cover or wrapper of the most objectionable character; and so the evils evidently sought to be remedied by the section might, at least so far as it is concerned, be practiced with impunity. It is not conceivable that this could have been the intention of Congress, for such an interpretation would at once reduce the law to absurdity and frustrate it; and this was never the office of interpretation. True, we are considering a criminal act, and the rule of strict construction applies; but as the present Mr. Chief Justice White said in United States v. Corbett, 215 U. S. 233, 242, 30 Sup. Ct. 81, 84 (54 L. Ed. 173):

"The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent."

In Pickett v. United States, 216 U. S. 456, 461, 30 Sup. Ct. 265, 267 (54 L. Ed. 566), Mr. Justice Lurton expressed the rule in this language:

"The reason of the law, as indicated by its general terms, should prevail over its letter, when the plain purpose of the act will be defeated by strict adherence to its verbiage."

In Glickstein v. United States, 222 U. S. 139, 32 Sup. Ct. 71, 56 L. Ed. 128, it was held that the immunity given by subdivision 9 of section 7 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 548 [U.

S. Comp. St. 1901, p. 3424]) was not applicable to a prosecution for perjury committed by the bankrupt when examined under it. That provision requires the bankrupt to submit to examination concerning his business, the cause of his bankruptcy, the character of his property and its whereabouts, and the like; but it is further provided that "no testimony given by him   *   *   *   shall be offered in evidence against him in any criminal proceeding." It was contended that since the immunity provision was couched in unambiguous words, the command to give testimony could not be so construed as to render such testimony admissible in a criminal prosecution for perjury; but, said Mr. Chief Justice White (222 U. S. 143, 32 Sup. Ct. 73, 56 L. Ed. 128):

"*   *   * It is impossible in reason to conceive that Congress commanded the giving of testimony, and at the same time intended that false testimony might be given with impunity in the absence of the most express and specific command to that effect."

This court had occasion to apply the rule in Daniels v. United States, 196 Fed. 459, 116 C. C. A. 233. See, also, Lau Ow Bew v. United States, 144 U. S. 47, 56, 57, 12 Sup. Ct. 517, 36 L. Ed. 340; United States v. Hogg, 112 Fed. 909, 912, 50 C. C. A. 608 (C. C. A. 6th Cir.). Apt and convincing illustration of the rule thus pointed out appears in Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, where the church had made a contract with a rector, an alien residing in England, according to which he was to remove to New York and enter into the service of the church. He complied with his contract, and a fine was imposed upon the church. The question was whether the act to prohibit the importation of an alien, under contract, "to perform labor or service of any kind in the United States" had been violated. Mr. Justice Brewer, in reversing the judgment, said (143 U. S. 458, 12 Sup. Ct. 511, 36 L. Ed. 226):

"It must be conceded that the act of the corporation is within the letter of this section, for the relation of rector to his church is one of service, and implies labor on the one side with compensation on the other."

In speaking of the argument of the court below, the learned justice said (143 U. S. 459, 12 Sup. Ct. 512, 36 L. Ed. 226):

"While there is great force to this reasoning, we cannot think Congress intended to denounce with penalties a transaction like that in the present case. It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."

It follows that the motion to elect was rightly denied both before and after the introduction of evidence; and it may be added that the record itself shows that repugnancy could not have entered into the verdict. Assuming for the sake of the question that the words "otherwise mailable" would bear the interpretation that defendant's counsel claim,

the most that could be urged would be that the court erred in failing to instruct the jury that if the inside matter was nonmailable, a verdict of acquittal should be returned upon the odd counts (section 212). Those counts are in terms aimed alone at the matter impressed upon the first page, and not against anything contained on the second page. The charge of the court respecting these counts was, however, extended to a consideration of (1) the matter "appearing on each page," that is, the first and second pages, and (2) the question whether the first and last pages constituted an outside cover. Except as it may be implied in the motion to elect, no request was made to instruct the jury that it could not convict on the odd counts unless the matter appearing on the second page was mailable, and no instruction to that effect was given; but the charge did include an instruction that if the language "appearing on each page is scurrilous," etc., it fell "within the ban of the law." It, therefore, cannot rightfully be affirmed that the verdict upon the odd counts amounted to a finding that the inside matter was mailable; on the contrary, the conclusion is inevitable that the jury found the inside matter to be nonmailable. It obviously results, upon defendant's interpretation of section 212, that so far as the odd counts are concerned, error entered into the verdict, but not repugnancy.

[2] The only other question arising under section 212 is whether in view of its language the first and last pages of each copy of the paper constituted an outside cover. If any infirmity exists in this behalf, it, too, is only a matter of error. We are therefore not called upon to pass on either of the questions of error so arising under section 212, if the judgment is sustainable under the even-numbered counts. The penalty imposed upon the defendant was less than the maximum which could have been imposed upon conviction under either section 211 or 212, and consequently no substantial right of defendant was prejudiced, no matter whether the judgment can be upheld under section 212 or not. The verdict was general, and amounted to a conviction upon all the counts submitted under both sections, and the sentence was also general; and the rule is that a general conviction and judgment cannot be reversed on error where one of the counts or sets of counts is good and warrants the judgment. Mr. Justice Gray stated the rule and the reason for it in Claassen v. United States, 142 U. S. 140, 146, 12 Sup. Ct. 169, 170 (35 L. Ed. 966):

"It is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only."

See, also, Evans v. United States, 153 U. S. 584, 595, 14 Sup. Ct. 934, 38 L. Ed. 830; Hocking Valley Ry. Co. v. United States, 210 Fed. 735, 740 (C. C. A. 6th Cir.); Wesoky v. United States, 175 Fed. 333, 334, 99 C. C. A. 121 (C. C. A. 3d Cir.); United States v. Lair, 195 Fed. 47, 50, 115 C. C. A. 49 (C. C. A. 8th Cir.); Greene v. United States, 154 Fed. 401, 410, 85 C. C. A. 251 (C. C. A. 5th Cir.); 2 Bishop's New Crim. Proc. (Ed. 1913) § 1015, par. 4, and section 1015a, par. 2, pp. 882, 883.

[3] We may therefore turn to a consideration of the even-numbered counts. Assignments of error are presented to the overruling of an objection made against receiving in evidence copies of the paper, The Owl, then in dispute, and also to a denial of a motion, made at the close of the evidence, to direct a verdict of not guilty upon each of the even-numbered counts. The reason assigned by counsel in support of the objection and motion was that the papers were not "obscene, lewd, lascivious, or indecent" within the purview of the statute. This presented merely a question of law. It is alleged in each of the even-numbered counts that the "paper and publication was then and there obscene, lewd, lascivious, and of an indecent character, and consisted in part of an article and so-called 'story' commencing with the words, 'Caught in the bathroom at 3 a. m.,' and is unfit to be set forth in this instrument or to be spread upon the records" of the court. It cannot be necessary here to state more than the substance of the publication. The principals involved were described in several ways; for instance, as a "merchant prince" and a "long-lost niece," the former being named, while the latter was not named, but was stated to have been "discovered in Europe;" pictures purporting to represent each were displayed in the article; it was stated that the niece "was quartered in a room" of the man's home; that from day to day they were seen at a restaurant at dinner time; that, suspicions being aroused, they were watched and finally found in the bathroom of his home "at about 3 o'clock in the morning;" a picture of a bathtub was given, bearing the man's initials and the word "Private," and it was stated that "after rumors of the escapade became current," the man "sent the long-lost niece back to her home in Germany."

It is enough to say of this that the publication falls within the general rule, which is well expressed in one of the decisions relied on by defendant's counsel (although that case in its facts differed from those involved here):

"The question of the character of the contents of the paper—namely, whether it comes within the inhibited class named in the statute—is one ordinarily to be determined by the jury under appropriate instructions from the court; that is, when there is such doubt as to the meaning and effect of the same that persons would reasonably differ in respect thereto." United States v. Journal Co. (D. C.) 197 Fed. 415, 416.

Error is assigned to the district judge's definition of the word "obscene," on the ground that as applied to this case it is too broad; but no assignment is found concerning the definitions given to the other words of the statute with which this one is associated; and this is important, because it will be observed in the portion of the charge below quoted that the definition complained of is in effect reduced to the meaning of the words, including the word "indecent," employed to define the word "obscene," and whatever is "indecent" is also prohibited by the same section. Besides, it is not perceived how the jury could have misapprehended the charge, taken as a whole, concerning the meaning of the words "obscene, lewd, lascivious, and of an indecent character," as they were used in the indictment and applied to the publication. The assignment will be better understood from the following portion of the charge:

"You observe that each of these even-numbered counts charges that the paper therein mentioned was obscene, lewd, lascivious, and of an indecent character. Now, what do these respective terms mean? As used in the statute, and in the several counts now under consideration, the word 'lewd' means having a tendency to excite lustful thoughts. 'Lascivious' means pertaining to that form of immorality which has relation to sexual impurity. 'Obscene' has a broader significance than the word 'lascivious.' 'Obscene' comprehends whatever is impure, unclean, indecent, foul, filthy, or disgusting. Obscenity is that form of indecency which is calculated to promote the general corruption of morals, while 'lewdness' and 'lasciviousness' are that form of immorality which has relation to sexual impurity. What is an obscene, lewd, or lascivious paper or publication is largely a question of your conscience and your own opinion. Before it can be said that a paper or publication is obscene, lascivious, lewd, or indecent, it must come to this point: It must be calculated with the ordinary reader to deprave his morals or lead to impure purposes. It is your duty to ascertain whether or not the paper or publication offered in evidence, as to each of the even-numbered counts, is calculated to deprave the morals, to lower that standard which we regard as essential to civilization, whether or not it is calculated to excite those feelings which in their proper field are all right, but which, transcending the limits of that field, play most of the mischief in the world. * * *

"The paper offered as to each count includes the article in question, and will be before you for your inspection and investigation, and it is for you to determine its character. If the paper or publication is obscene, or is lewd, or lascivious, or of an indecent character—if it has any one of these four characteristics, it falls within the ban of the law; but if it is not obscene, nor lewd, nor lascivious, nor of an indecent character, if it has no one of these four characteristics, then no offense has been committed as to any one of the even-numbered counts."

The similarity between this and the portion of the charge approved in Dunlop v. United States, 165 U. S. 486, 500, 17 Sup. Ct. 375, 41 L. Ed. 799, respecting the words "obscene, lewd, lascivious, or indecent," and the observations of Mr. Justice Brown in that case (165 U. S. at page 501, 17 Sup. Ct. 375, 41 L. Ed. 799), and of Mr. Justice Harlan in Rosen v. United States, 161 U. S. 29, 43, 16 Sup. Ct. 434, 480, 40 L. Ed. 606, furnish a complete answer to counsel's objection. No decision has been cited or has come to our notice which in principle militates against this conclusion; and it is to be noted that in the Dunlop and Rosen Cases sanction was given to the action of the trial court in placing a material degree of reliance upon the good sense and judgment of the jury touching the practical meaning and effect of the words of the statute as applied to the particular publication in dispute.

Error is assigned to the portion of the charge that submitted to the jury the entire paper, The Owl, as to the even-numbered counts, and especially to that part concerning the "other bathtub tragedies in Cincinnati, and likewise to the Leverone divorce case;" but when exception was taken to this, while the whole paper was allowed to remain in evidence, the court expressly restricted the consideration of the jury to the portion beginning on the first page and extending into the second page, that is, to the publication complained of in the indictment; even if error would otherwise have intervened, the court's instruction avoided it. Dunlop v. United States, supra, 165 U. S. at page 498, 17 Sup. Ct. 375, 41 L. Ed. 799.

Error is assigned to a statement in the charge that the jury was not concerned with the question whether or not the person named in the publication was damaged, because that question was "properly left

with the state or other courts under other and different proceedings." We do not see how this could have prejudiced the defendant. It was apparently designed to prevent the jury from considering the rights of any person mentioned in the publication; and the natural effect of this must have been more certainly to direct and confine attention to the single issue, whether there had been a misuse of the mails.

It can serve no useful purpose to extend the discussion to further details. All the assignments concerning the even-numbered counts have been fully considered and no reversible error has been found. The charge concerning those counts, not to speak of the others, was full, and was also calculated to advise and to admonish the jury of its province and duty as respects both prosecution and defense. From all these considerations we are constrained to believe that the finding upon the even-numbered counts cannot rightfully be disturbed. Dunlop v. United States, supra, 165 U. S. at page 501, 17 Sup. Ct. 375, 41 L. Ed. 799; Knowles v. United States, 170 Fed. 409, 411, 95 C. C. A. 579 (C. C. A. 8th Cir.), and cases there cited.

It results that the judgment must be affirmed.