## ULMER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1915.)

No. 2501.

1. BANKRUPTCY ⬤⟳494—PERJURY—INDICTMENT.

Where, in a prosecution of a third person for perjury alleged to have been committed in a bankruptcy proceeding, the indictment charged that accused testified falsely that he had received $1,500 in currency for a check given to the bankrupts, etc., the indictment was not defective for failure to sufficiently state the antithetical facts necessary to make clear that the testimony was substantially false, by alleging positively that defendant did not receive $1,500 or any substantially similar sum.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 911; Dec. Dig. ⬤⟳494.]

2. INDICTMENT AND INFORMATION ⬤⟳71—AMBIGUITY.

Alleged uncertainty in an indictment is not fatal, where there is no failure to state facts constituting the crime, so as not to mislead accused or expose him to a second prosecution for the same offense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 144, 174, 193, 194; Dec. Dig. ⬤⟳71.]

3. BANKRUPTCY ⬤⟳486 — EXAMINATION OF THIRD PERSON — MATERIALITY — PERJURY.

The examination of a third person concerning the acts, conduct, and property of a bankrupt, provided for by Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 551 (Comp. St. 1913, § 9605), may be as broad in scope as the examination of the bankrupt himself, authorized by section 7 (section 9591), so that on an examination of accused to explain the consideration for a check for $1,500 given by him to the bankrupts on the day they began business, they having withdrawn a like sum on the same day by checks to various payees, the testimony of accused that he did not receive such checks, but received currency from the bankrupts for his check, was sufficiently material to be the proper subject of a prosecution for perjury.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 904; Dec. Dig. ⬤⟳486.]

4. BANKRUPTCY ⬤⟳495—OFFENSES—FALSE OATH—EVIDENCE—MOTIVE.

In a prosecution of accused for perjury in his examination concerning the affairs of bankrupts, evidence showing the close business and confidential relations between defendant and the bankrupts was admissible to show motive.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 912; Dec. Dig. ⬤⟳495.]

5. CRIMINAL LAW ⬤⟳1043—APPEAL—RULINGS ON EVIDENCE—OBJECTIONS.

A general objection to evidence, to wit, "I object," is insufficient to save any question for review.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2654, 2655; Dec. Dig. ⬤⟳1043.]

6. CRIMINAL LAW ⬤⟳1129—ASSIGNMENTS OF ERROR—SPECIFICNESS.

An assignment that the court's charge and the language thereof were prejudicial to the rights of the defendant was too general to constitute a compliance with Court of Appeals rule 11 (193 Fed. vii, 112 C. C. A. vii), and presented no question for review.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2954-2961; Dec. Dig. ⬤⟳1129.]

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. CRIMINAL LAW ☞984—PERJURY—EXAMINATION OF THIRD PERSON—SEPARATE COUNTS—SINGLE OFFENSE—SENTENCE.

An indictment for perjury, alleged to have been committed by accused in his examination concerning the property of certain bankrupts, in violation of Bankr. Act, § 29b(2) (Comp. St. 1913, § 9613), charged in the first count that on November 13th defendant falsely testified that he received $1,500 in currency from the bankrupts in exchange for his check. The second count was based on the same statement made at another time on the ·same day, and the third count was based on defendant's testimony, given November 20th,· that he did not receive checks from the bankrupts in exchange for his check. *Held*, that since one item of false testimony constituting a crime is not multiplied into several crimes, because an answer is repeated as many times as the question is asked, nor because the answer is varied in form, and it is not important that there was an intervening recess between the. false statements, so long as the continuity of the testimony was not broken, the testimony, though false, constituted but a single offense, and hence, on conviction of accused on all three of the counts, he was not subject to sentence on each, to run successively.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2504–2509, 2541; Dec. Dig. ☞984.]

In. Error to the District Court of the United States for the Northern District of Ohio, Eastern Division; John M. Killits, Judge.

Dan Ulmer was convicted of perjury in testifying before a referee in bankruptcy, and he brings error. Reversed and remanded for re-sentence.

W. H. Boyd and, F. J. Wing, both of Cleveland, Ohio, for plaintiff in error.

U. G. Denman, of Cleveland, Ohio, for the United States.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Ulmer was· indicted for perjury in the giving of testimony before a referee in bankruptcy regarding a transaction between Ulmer and the bankrupt firm. Just as this firm was starting in business, Ulmer, who was their landlord and who had maintained various business relations with them, gave to them his check for $1,500. They deposited it in their bank account which they opened the same day, and it was duly paid. On the same day, they drew against such account three checks, to various payees, aggregating $1,-500. The business was short-lived, and, in the bankruptcy proceedings a few months later, this transaction was investigated. Evidently, it was claimed that the transaction was merely colorable and was only an exchange of checks for the purpose of padding the bankrupts' bank deposit so that the book could be exhibited showing a deposit of $3,500 instead of the actual net deposit of $2,000. On the other hand, it was claimed that the bankrupts actually had $3,500 in cash or good checks; that they gave Ulmer $1,500 in cash in exchange for his check to meet his immediate need of currency; and that the smaller checks aggregating $1,500 were not given to Ulmer or for his benefit. As a witness before the referee, Ulmer testified that the consideration received by him for his check was cash, and that the transaction was not an exchange of checks. The jury found that this statement was false,

and convicted him of perjury, whereupon he brought this writ of error.

[1] The first claim is that the indictment was inadequate because it did not sufficiently state the antithetical facts necessary to make clear that the testimony was substantially false. This position is based upon a line of decisions of which U. S. v. Pettus (C. C.) 84 Fed. 791, is fairly typical. More specifically, it is pointed out that while the indictment charges that Ulmer testified he had received $1,500 in currency, and charges that the statement was untrue, yet that the assignment (the antithesis alleged) only says that it was "untrue in this: That the said Dan Ulmer did not * * * receive the amount of $1,500 in currency." The practical criticism is that it should have been positively alleged that he did not receive $1,500 or any substantially similar sum, so as to make clear that he did not receive (e. g.) $1,495. Again, it is pointed out that, while he testified to receiving $1,500 in cash, the assignment is that he did not receive $1,500 in exchange for or in connection with a check. The criticism is that the testimony and the assignment are not necessarily inconsistent, and that the recital of the testimony should have been more specific or the assignment should have been more general. Other similar imperfections are pointed out.

[2] It is sufficient to say of all these objections to the indictment that we regard them as overnice. As we said in Daniels v. U. S., 196 Fed. 459, 465, 116 C. C. A. 233, 239:

"In such ambiguity as exists, we fail to find any failure to state facts constituting a crime or any tendency to mislead the respondent or any danger that he will be exposed to a second prosecution on account of any of the subject-matter; and these are the tests which will, in most cases, determine the sufficiency of the description of the offense as found in an indictment." U. S. v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Bennett v. U. S. (C. C. A. 6) 194 Fed. 630, 114 C. C. A. 402, affirmed 227 U. S. 333, 33 Sup. Ct. 288, 57 L. Ed. 531.

See, also, G. R. & I. Ry. v. U. S. (C. C. A. 6) 212 Fed. 577, 583, 129 C. C. A. 113, upon the analogous question of variance.

Further, no demurrer was filed or motion to quash made or objection to the indictment effectively taken, until by motion in arrest after verdict. In such case, nothing less than substantial failure in substance in the indictment can avail defendant. Formal or artificial insufficiencies are waived. Dunbar v. U. S., 156 U. S. 185, 191, 192, 15 Sup. Ct. 325, 39 L. Ed. 390; Rosen v. U. S., 161 U. S. 29, 34, 35, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Tyomies·Pub. Co. v. U. S. (C. C. A. 6) 211 Fed. 385, 389, 128 C. C. A. 47.

[3] The conviction is next attacked, because neither indictment nor proof sufficiently shows the materiality of the false testimony. This testimony was given in some proceeding before the referee. Doubtless, it appeared clearly enough in the court below just what this proceeding was; but the record brought to this court does not directly show. A specific issue had been framed before the referee between the trustees and Ulmer regarding the ownership of some fixtures, and it is suggested that the false testimony was given on the trial of this issue. If this was the proper inference, the materiality of the testimony would, perhaps, be uncertain. On the other hand, sections 21a and 38(2) of

the Bankruptcy Act (Comp. St. 1913, § 9622) authorize the court to require any person to appear before the referee "to be examined concerning the acts, conduct or property of a bankrupt." On November 13th the referee made an order that Ulmer appear before him on that day "to submit to an examination under the acts of Congress relating to bankruptcy." The testimony upon which the charge of perjury is predicated was given, part on the 13th of November and part at an adjourned session on the 20th of November. It is clear from the charge of the court that the judge supposed the testimony involved had been given in the course of a general examination under section 21. No objection was made or exception taken that counsel thought it had been given upon the issue of who owned the fixtures; and if, in view of this unchallenged assumption by the court, there remained doubt as to the nature of the proceeding, it would be removed by observing that the issue as to the fixtures was finally decided on November 16th, so that the testimony given on November 20th must have been in the general examination to which Ulmer submitted pursuant to the referee's order. As this testimony on the 20th was the same as on the 13th, the same inference applies to the earlier testimony.

The allegations of the indictment as to materiality we think sufficient; but the court charged the jury that, as matter of law, this testimony was material to the issue under examination, so that there was nothing for the jury to consider on that subject; and an exception was directed to this point. It therefore becomes necessary to determine what the issue was under the examination, and to see if the court could positively say that it would be material to this issue whether Ulmer, in exchange for his check given to the bankrupts, received $1,500 in cash or received the three checks which the bankrupts drew on that day. The right and power of the referee to make the order were not challenged, but Ulmer appeared and submitted to the examination. The purpose and scope of an examination under this section have not been much considered in cases where the permissible extent of such inquiry was necessary to be decided—perhaps because the generality of the language used has been thought all-sufficient. The Supreme Court said in Cameron v. U. S., 231 U. S. 710, 717, 34 Sup. Ct. 244, 246 (58 L. Ed. 448):

"The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved."

This decision also observes that subdivision 9 of section 7 should be read in connection with section 21a; and it is difficult to see why the examination concerning "the acts, conduct and property of a bankrupt," provided by 21a, is less broad in its scope than the examination of the bankrupt himself, provided by section 7, concerning "all matters which may affect the administration and settlement of his estate."

In Re Carley (D. C.) 106 Fed. 862, 863, Judge Evans says that the object of this proceeding is "to secure information on those subjects for use in the administration of the bankrupt's estate. The statute was intended for beneficial purposes, and, in order to effect them, witnesses

should fully disclose all their knowledge relative either to the acts, the conduct, or the property of the bankrupt."

Speaking for the Circuit Court of Appeals of the Second Circuit in Re Horgan, 98 Fed. 414, 415, 39 C. C. A. 118, 119, Judge Wallace said that these provisions of the Bankruptcy Act "are intended to enable creditors to discover transactions which may affect the right of the bankrupt to obtain a discharge, and to enable the trustee to ascertain whether any assets exist which should be collected and applied toward the payment of the bankrupt's debts."

The same court, in an opinion by Judge Rogers (In re Samuels, 215 Fed. 845, 132 C. C. A. 187), speaking of this section, said:

"That section intended to and provides a searching and summary method for the discovery of hidden assets, not only by the examination of the bankrupt, but of other witnesses. The proceeding it authorizes is meant to assist the trustee in discovering and collecting the assets. * * * The person to be examined cannot object to being sworn and examined on the ground that no issue has been made up for determination; neither can he object that there is no fact in dispute. The simple object is to obtain information as to the bankrupt's property."

Of a similar examination, it was said by the Court of Appeals for the Third Circuit (People's Bank v. Brown, 112 Fed. 652, 653, 50 C. C. A. 411, 412):

"Its object was to determine whether the bankrupt did not have an interest in the property which should be applied to the payment of his debts, and the discovery sought would have been superfluous if, as a condition precedent to its requirement, it had been necessary to independently establish the existence of such interest."

These cases make clear enough, if indeed it is not obvious on the face of the statute, that upon such examination no specific issue is or can be made up, but any fact or circumstance is relevant and material which fairly tends to establish something which may become important in the administration of the estate. The existence of property rights or interests not scheduled, or rights to defend against apparent claims, or rights of creditors to reclaim property in the hands of the bankrupt, or rights of a bankrupt to discharge—all these are instances of matters properly subject to investigation on such a proceeding.

In the instant case, upon the truthfulness of Ulmer's alleged false testimony depends the fact whether the bankrupt firm actually began business with $3,500 capital or with $2,000 capital. Upon the answer to this depends the amount of property which the trustee should endeavor to find or to satisfy himself had been legitimately disposed of before the bankruptcy; and no inquiry could be more pertinent and no subject-matter could be more relevant than this. Also, if the bankrupts had fictitiously swelled by $1,500 the amount of their opening bank deposit, and so had fraudulently obtained credit, that would affect their right to discharge, and would affect the creditors' rights to reclaim. True, it did not appear that any one had actually given credit on the strength of such false appearance of capital, but it does appear that the bankrupts started at once for New York to buy goods, and that they immediately made to a commercial agency a statement showing that their capital was $4,500, made up of the items of $3,500 and $1,-

000. It cannot be necessary that on this examination, and in order to make a false answer perjury, evidence must be introduced of every link in the chain which will make the answer ultimately and certainly important in the administration of the estate. It is enough if it is apparent that the answer may be important. Any other rule would defeat the object of the examination and would make the existence of perjury in such examination dependent on the order of proof before the referee; whether false testimony was perjury would be contingent on whether by later testimony in that proceeding, or, indeed, at any time during the settlement of the estate, facts appeared showing that the matter inquired about turned out to be important. We cannot escape the conviction that to hold a witness on such examination not subject to punishment for false testimony, unless a distinct issue had been formulated, or unless the final value of the testimony had already been fixed by other proof, would be to give him, in the words of Chief Justice White in Glickstein v. United States, 222 U. S. 139, 143, 32 Sup. Ct. 71, 73, (56 L. Ed. 128), "a mere license to commit perjury." For these reasons we think the court below was right in holding that there was no question for the jury on the subject of materiality, if, indeed, that subject may ever be for the jury—a question we have not considered.

[4] Considerable evidence was introduced tending to show close business and confidential relations between Ulmer and the bankrupts. It is urged that this was inadmissible because having no bearing on the truth of the testimony in question; and complaint is made that the testimony is shaped as if Ulmer had been on trial for conspiracy with the bankrupts to defraud their creditors. The court below considered this evidence admissible on the theory that it tended to show motive. The formal thing in issue was whether Ulmer told the truth when he said that the transaction was not an exchange of checks; but this necessarily led the jury to consider, as the real question, whether he did in fact make the check exchange. Any testimony bearing on this, the real ultimate question, was clearly admissible. If he did make the exchange, it must have been with the purpose to aid the bankrupts in making a false showing of capital, whereby they might get credit to which they were not entitled, and so take the first step toward defrauding creditors. No other possible purpose is suggested. It thus appears that there can be no sharp line between testimony relevant to the charge of Ulmer's perjury and testimony relevant to the charge of Ulmer's participation in such a scheme to defraud; and, with this consideration in mind, evidence which was received "to show motive" was not so irrelevant as to make its reception reversible error. See Daniels v. United States, 196 Fed. 459, 461, 462, 116 C. C. A. 233.

[5] Of course, this resemblance between the issue here and what would have been the issue in a conspiracy trial did not justify receiving evidence competent only because of rules peculiar to trials for conspiracy; but the two or three instances in which it would seem this distinction may have been overlooked do not justify a reversal; and this is so both because no objection was made save the general one, "I object," which does not operate to save any question for review (Mitchell v. Marker, 62 Fed. 139, 141, 10 C. C. A. 306, 25 L. R. A. 33; Merchants Co. v. Buckner [C. C. A. 6] 110 Fed. 345, 346, 49 C. C. A.

80), and because the facts elicited were comparatively so trifling and unimportant that we cannot think they were seriously prejudicial.

[6] Complaint is made that Ulmer's rights on the trial were prejudiced because the judge publicly indicated his opinion that one of Ulmer's witnesses committed perjury on the trial. If there was error in this action, accompanied, as it was, by a caution that the jury should judge the facts, there is no assignment of error sufficient to present the question. The language complained of occurred during the course of a complete charge, and the only assignment of error which may bear upon it is "that the court's charge to the jury and the language thereof were prejudicial to the rights of the defendant." This is entirely too general, under the provisions of rule No. 11 (193 Fed. vii, 112 C. C. A. vii), and its settled construction by this court. The Myrtie M. Ross, 160 Fed. 19, 22, 87 C. C. A. 175; Garrett v. Pope Co., 168 Fed. 905, 94 C. C. A. 334.

[7] The only remaining question which we think important relates to the sentence. The first count charges, as the false testimony, Ulmer's statement on November 13th that he received $1,500 in currency in exchange for his check. The second count was based on the same statement on the same day; and the proof interprets these two counts as applying one to the statement and one to its repetition later in the examination. The third count is based upon Ulmer's testimony given on November 20th, that he did not receive checks in exchange for his check. He was convicted upon each count, and was sentenced to imprisonment for two years upon the first count, one year upon the second count, and two years upon the third count; the sentences being expressly made successive and not concurrent. These three counts charge one offense and one only—the making of substantially the same statement during the examination. Twice the statement is put in one form and once it is the same thing in converse form. One item of false testimony, constituting a crime, is not multiplied into several crimes because an answer is repeated as many times as the question is asked, nor because the answer is varied in form to meet the modified shape of the inquiry; nor can it be important whether an intervening recess is of a few minutes or a few days, so long as the continuity of the testimony is not broken. Although counsel have not found, nor do we, any rulings to the effect that such repetitions constitute only one crime, yet this conclusion seems to us inevitable, as one of practical necessity. The contrary one would lead to the unthinkable result that if a witness had testified twice on the same occasion to the same thing, and had been tried for perjury in the first statement and acquitted, he could still be tried and convicted upon the second statement.

If the indictment and sentence could rightfully be treated as under section 125 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1111 [Comp. St. 1913, § 10295], formerly R. S. § 5392), the error inherent in three convictions and three sentences for one crime might be immaterial, because the three sentences would aggregate no greater period than might have been imposed on conviction on one count (Botsford v. U. S., 215 Fed. 510, 515, 132 C. C. A. 22); but the prosecution cannot be so considered. Not only does the indictment specify that it is founded on section 29 of the Bankruptcy Act (a consideration not

controlling—Williams v. U. S., 168 U. S. 382, 389, 18 Sup. Ct. 92, 42 L. Ed. 509), but it is industriously drawn in the language of the Bankruptcy Act, § 29b(2), so as to charge that Ulmer "made a false oath in and in relation to a proceeding in bankruptcy." We approve and adopt the holding of the Second Circuit Court of Appeals in Wechsler v. U. S., 158 Fed. 579, 86 C. C. A. 37, which makes it necessary to regard this prosecution as one under the Bankruptcy Act only, and forbids going to section 125 of the Penal Code for support. From this view, and from the conclusion that only one offense was committed, it follows that imprisonment for more than the two years specified in section 29b was unauthorized.

This error goes only to the sentence, not to the verdict. It is impossible to allow the sentence to stand on one count and set aside the other two sentences, because we cannot tell how much imprisonmnt the district judge would have imposed if proceeding under the theory which we have thought the right one.

We therefore reverse and set aside the sentence and remand the case for new sentence upon the existing verdict. Williams v. U. S., supra, 168 U. S. at page 389, 18 Sup. Ct. 92, 42 L. Ed. 509; Wechsler v. U. S., supra, 158 Fed. at page 584, 86 C. C. A. 37; Johnson v. U. S. (C. C. A. 7) 215 Fed. 679, 684, 131 C. C. A. 613.