**KEATON et al. v. LOONEY.**

No. 1956.

Circuit Court of Appeals, Tenth Circuit.

March 25, 1940.

Earle F. Wingren, of Denver, Colo. (M. A. Dennis, of Okmulgee, Okl., N. A. Gibson, Jr., of Tulsa, Okl., and C. A. Bailey, of Denver, Colo., on the brief), for appellants.

H. S. Samples and E. J. Gilder, both of Okmulgee, Okl. (James E. Griffith, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

C. D. Gold and J. B. Keaton filed separate petitions in voluntary bankruptcy and were adjudicated bankrupts. They did not schedule any assets except exempt property. W. R. Looney was appointed trustee of each estate, and he filed with the referee separate petitions for summary orders requiring the bankrupts to turn over certain money and property. It was alleged that the bankrupts had for many years been associated together in the oil and gas business, sharing equally in their profits and losses; that they conducted their business in the name of Bruin Oil Corporation, hereinafter called the corporation, which they managed and directed; that prior to bankruptcy each of them owned an undivided one-third interest in a certain producing lease known as the Havel lease; that Gold carried title to his interest in the name of his wife, M. B. Gold, and Keaton carried title to his interest in the name of his brother, C. L. Keaton; that M. B. Gold and C. L. Keaton owned no interest therein but were merely stakeholders or trustees; that the bankrupts sold their interest in such lease for cash, and after the debts and expenses were paid, each received $1,-172.40; that they turned such money into the treasury of the corporation, and that the corporation owed it to them at the time the petitions in bankruptcy were filed; that about six months prior to bankruptcy the corporation owed each bankrupt $3,500 for salary and bonus, and gave each a note therefor, due one year after date; that for the purpose of preventing their creditors from reaching such indebtedness and subjecting it to payment of their claims, the note of Gold was made payable to his wife and that of Keaton was made payable to his brother, but that the bankrupts owned such notes, respectively; that after bankruptcy each bankrupt was paid $2,000 on his note; that at the time the petitions were filed the corporation owed Gold $815.21 and Keaton $907.71 for salary and bonus; that each bankrupt owned an undivided one-half interest in a drilling machine, oil well drilling tools, equipment and appliances used by them in drilling and operating for the corporation; that each owned an automobile, and 505 shares of capital stock in the corporation; that because of their financial difficulties and to prevent their creditors from having resort thereto, the stock of Gold was issued in the name of his wife and that of Keaton was issued in the name of his brother, but that the bankrupts were the real owners thereof, the wife and brother merely acting as stakeholders or trustees; that none of such money or property was scheduled or surrendered to the trustee; that all of it was in the possession of the bankrupts and was within the jurisdiction of the court; that it constituted assets of the estates and should be in the possession of the trustee; and that by reason of their management and control of the corporation, the bankrupts had it within their power to cause the whole thereof to be delivered to him.

The bankrupts were notified of the time and place of a hearing on the petitions. Gold filed a plea to the jurisdiction of the referee to proceed in the matter on the ground that it appeared from the face of the petition that M. B. Gold was a bona fide adverse claimant to the property alleged to belong to his estate; that she was not a party, had not been served, and had not submitted herself to the jurisdiction of the court; and he expressly denied that he owned such money, property and stock, or that M. B. Gold held it as his agent or trustee. Appearing specially for the purpose of the motion, not entering a general appearance or submitting herself to the jurisdiction of the court and not consenting to the submission of the issues involved to trial on their merits, M. B. Gold moved the referee to dismiss the petition for the reason that she claimed the property adversely to the bankrupt and the trustee, that her claim was not by way of a fraudulent transfer made within four months preceding the filing of the petition in bankruptcy, and that she did not consent to try title to such prop-

erty in that action. An affidavit made by her and attached to the motion contained statements and recitations which if satisfactorily proved by competent evidence would establish title and right of possession in her. Keaton filed a like plea to that filed by Gold, C. L. Keaton filed a similar motion and affidavit to that filed by M. B. Gold, except that he held the 505 shares of stock as trustee for his father, J. A. Keaton; and J. A. Keaton filed a like special appearance and affidavit showing his title and right of possession to the stock.

After the hearing at which the bankrupts appeared by their attorneys and the claimants appeared specially by theirs, the referee overruled the pleas of the bankrupts and denied the motions of the claimants. Thereafter the referee conducted a hearing in respect to the money and property in question. The trustee appeared in person and by attorneys and the bankrupts appeared by attorneys, but the record fails to indicate that the claimants appeared or participated in such hearing. Oral testimony, written evidence, and a transcript of the testimony given by the bankrupts at the first meeting of creditors and at a hearing on objections to discharge were submitted. The referee made extended findings of fact, and conclusions of law. Summarized, it was found, among other things, that the bankrupts had been associated together in the oil and gas business for twelve years or more preceding bankruptcy, securing leases and drilling wells for their own use and benefit, and sharing equally in the profits and losses; that for more than three years immediately preceding bankruptcy, they had taken leases in the name of the corporation, and had conducted their business in its name for the purpose of concealing their assets from their creditors; that all of the money and property carried in the name of the corporation were acquired by the labor and efforts of the bankrupts; that the corporation was not a bona fide operating corporation but only a shell used as a cloak and subterfuge for the concealment of assets; that by direction of the bankrupts, M. B. Gold and C. L. Keaton were carried as officers of the corporation but took no part in its management and did not share in its profits; and that the bankrupts were the real owners and had the possession and control of all money and property carried in the name of the corporation. It was further found that the claims to the stock were colorable and not real, but no finding of that kind was made in respect to the other claims. It was concluded that title to all of the money and property in question, except the automobiles, was vested in the bankrupts at the time they filed their petitions in bankruptcy; that the trustee was entitled to immediate possession; and the bankrupts were ordered to deliver the same within twenty days. The bankrupts filed exceptions, and petitioned for review. The court consolidated the two proceedings for a hearing, approved and confirmed the findings and order of the referee, and ordered and directed the bankrupts to deliver the money and property, except the automobiles, to the trustee within twenty days from the date of the order. The bankrupts and the claimants excepted and joined in the appeal from such order.

It has been held with uniformity that a court of bankruptcy lacks jurisdiction to try in a summary proceeding issues in respect to property held adversely to the bankrupt estate, without the consent of the adverse claimant. But the mere filing of a claim does not oust the court of jurisdiction to enter upon a preliminary inquiry for the purpose of determining whether the claim is real and substantial or only colorable. And if the preliminary inquiry discloses that the claim is so completely without substance as to be colorable or fictitious the court may proceed to adjudicate the merits summarily, but if the claim is found to be real and substantial the summary jurisdiction of the court has been exhausted, and the trustee can then attack the rights of the claimant only in a plenary action. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; American Finance Co. v. Coppard, 5 Cir., 45 F.2d 154; In re Bastanchury Corporation, 9 Cir., 62 F.2d 537; In re Prima Co., 7 Cir., 98 F.2d 952, certiorari denied 305 U.S. 658, 59 S.Ct. 357, 358, 83 L.Ed. 426; Thompson v. Terminal Shares, 8 Cir., 104 F.2d 1; James Talcott, Inc., v. Glavin, 3 Cir., 104 F.2d 851; In re Meiselman, 2 Cir., 105 F.2d 995.

A bankruptcy court has power to adjudicate in a summary proceeding a controversy in respect to property in the actual or constructive possession of the bankrupt at the time the petition was filed, without the consent of the adverse claimant. Chandler v. Perry, 5 Cir., 74 F.2d 371; Magnolia Petroleum Company v. Thomp-

son, 8 Cir., 106 F.2d 217. The drilling machine, tools, equipment and appliances in question were in the name of the corporation. The bankrupts were in the physical possession of such property in the conduct of drilling operations in the field, but the nature of that possession depended upon title and ownership. If they were in possession of it as owners or with some legal or equitable interest akin to ownership, it was a part of their estates for the purpose of bankruptcy and the court had undoubted jurisdiction to require them to deliver it to the trustee. But if it belonged to the corporation or the claimants, and the bankrupts had never owned or claimed ownership of it, but at all times had it in their possession only as agents of the corporation or the claimants in the conduct of the business, and not otherwise, then it was not in their actual or constructive possession as property belonging to their estates and the court was without jurisdiction to require in a summary proceeding its delivery to the trustee, without the consent of the actual owner. It is manifest that the primary question presented to the referee in the first instance and to the trial court on review, was title. In like manner, title was the primary question concerning the two sums of $1,172.40, each representing the balance from the sale of the Havel lease, the amount paid on the two notes of $3500 each, the balance due on such notes, and the shares of stock. In respect to the whole of the property the primary question presented was title, other questions were secondary, subordinate and incidental. Virtually all of the evidence adduced upon the hearing was addressed to the question of title, but in the very nature of things it could not well have been otherwise as the controversy revolved around that question. Furthermore, there is no evidence in the record which tends to show that the shares of stock or the two notes ever were in the possession of the bankrupts as owners, agents, or otherwise. Apart from the question whether the adverse claims could be sustained in an appropriate action involving their merits, they disclosed contested questions of right, of fair doubt and reasonable room for controversy in matters of fact and law, and were not merely colorable.

The order is reversed and the cause remanded, with direction to dismiss the petitions of the trustee without prejudice to the right to institute a plenary suit or suits in any court of competent jurisdiction.