## TRAVIS v. UNITED STATES.
### No. 2269.

Circuit Court of Appeals, Tenth Circuit.
Nov. 3, 1941.

A. S. Wells, of Seminole, Okl. (Malcolm E. Rosser and Malcolm E. Rosser, Jr., both of Muskogee, Okl., on the brief), for appellant.

Cleon A. Summers, U. S. Atty., of Muskogee, Okl., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Appellant was indicted for the crime of perjury. The indictment charged that there was pending in the United States Court for Eastern Oklahoma a certain cause in bankruptcy involving the estate of her husband, J. R. Travis; that the referee in bankruptcy acquired and had competent jurisdiction to hear and determine all material issues raised by the pleadings and claims in such cause; that the disposition made of nine United States bonds in the aggregate face value of $13,000 formerly owned by the bankrupt and in his possession became a material issue; that appellant offered herself as a witness in the hearing being conducted by the referee; that she was duly sworn by the referee who was authorized by law to administer the oath; that she testified under oath that she owned such bonds on January 11, 1937, and prior thereto, that her husband gave them to her, that between January 11 and November 16, 1937, she delivered them to her brother, Jack Finner; that he had cashed them for her and delivered the proceeds to her, and that she used such proceeds for general household and living expenses of herself and husband; that she

knew such testimony, statements and declarations were material matters to the hearing being conducted; that such testimony was false and untrue in that appellant did not deliver the bonds to her brother, that he did not sell them for her account, and that she did not receive the proceeds thereof; that in truth and in fact her husband delivered the bonds to one Jess Faulkner (son-in-law of the bankrupt); that they were in the possession and control of Faulkner, and on deposit in a bank at Hugo, Oklahoma, for safekeeping at the time such false testimony was given; and that they remained there until December 12, 1939, when three of them, in the aggregate face value of $7,000, were delivered to the trustee and were subsequently sold on order of the referee as assets of the estate of the bankrupt.

A jury found appellant guilty, and the court sentenced her to confinement in jail for one day and to pay a fine of $500. She appealed.

■ The sufficiency of the indictment was assailed by demurrer on the grounds that the matters and things charged did not constitute an offense against the laws of the United States; that they did not constitute the crime of perjury as defined in section 125 of the Criminal Code, 18 U.S.C.A. § 231; and that the indictment was defective and insufficient in other respects. Section 5396, Revised Statutes, 18 U.S.C.A. § 558, provides that an indictment for perjury shall be sufficient if it sets forth the substance of the offense charged, the court in which it occurred, the person before whom the oath was taken, and that such court or person had authority to administer it, together with the proper averment showing the falsity of the matter in which the perjury is assigned. Ordinarily an indictment must embrace every element of the offense charged, must apprise the accused of the nature of the accusation, and must be sufficiently specific to protect him against a subsequent prosecution for the same offense. United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Weber v. United States, 10 Cir., 80 F.2d 687; Crapo v. United States, 10 Cir., 100 F.2d 996; Graham v. United States, 10 Cir., 120 F.2d 543.

■ This indictment specified the court in which the bankruptcy proceeding was

pending, described the proceeding by number and style, set forth the name and official capacity of the person who administered the oath, charged that he was authorized by law to administer it, alleged the substance of the testimony given, alleged that such testimony was false, and alleged the true facts. In these respects, it was definite, free from ambiguity, complete, and in full conformity with the statute. It further charged in general language that the disposition made of the bonds was a material issue. That was sufficient, as the materiality of perjured testimony may be charged either by an allegation of its materiality or by pleading facts which of themselves show that it was material. Markham v. United States, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441; Hendricks v. United States, 223 U.S. 178, 32 S.Ct. 313, 56 L.Ed. 394; Berry v. United States, 9 Cir., 259 F. 203; Ryan v. United States, 7 Cir., 58 F.2d 708; Claiborne v. United States, 8 Cir., 77 F.2d 682; Woolley v. United States, 9 Cir., 97 F.2d 258. And the giving of false testimony in a bankruptcy proceeding which relates to a material issue constitutes an offense under section 125, supra. Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118. It is clear that the indictment was not open to the attack directed against it.

■■ In order to support the charge of perjury the false testimony must have related to a material issue in the bankruptcy proceeding. The question of materiality was for the court, not the jury. Sinclair v. United States, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692; Carroll v. United States, 2 Cir., 16 F.2d 951, certiorari denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880; United States v. Slutzky, 3 Cir., 79 F.2d 504; Blackmon v. United States, 5 Cir., 108 F.2d 572. And the court instructed the jury that the testimony did relate to an issue which was material.

Appellant contends that the testimony did not concern a material issue and therefore cannot support the charge of perjury. The husband of appellant had United States bonds in the aggregate sum of $20,000 in a bank in Lawton, Oklahoma, for safekeeping. In November, 1933, he caused the records of the bank to be changed to show her as the depositor of them, and the bank issued a receipt to her. Some of the bonds were sold about a month later, some were redeemed, in 1935, some were called, some were exchanged, and some additional purchases were made. The petition in bankruptcy was filed December 16, 1936. Bonds of the face value of $13,000 were in the bank at that time. They remained there until January 11, 1937, when appellant withdrew them. She testified that her husband gave her the bonds in 1933, and that they were her property continuously thereafter until she delivered them to her brother for disposition. The argument is that while the referee could require appellant to turn over to the trustee property in her possession belonging to the bankrupt, she could not be required to turn over her own property, or property in which she asserted a substantial adverse claim; that when it developed that the bonds belonged to her, the referee had no jurisdiction to interrogate her respecting them; and that therefore the testimony did not bear upon a material issue over which the referee had jurisdiction. A court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy antedating the intervention of bankruptcy concerning property not in the possession or control of the bankrupt or some one representing him, and not in the custody of the court at the time of the controversy, but in the actual possession of the adverse claimant, unless such adverse claimant consents thereto. Resort must be had to a plenary suit for the adjudication of a controversy of that kind. Babbitt v. Dutcher, 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402, 17 Ann.Cas. 969; Weidhorn v. Levy, 253 U.S. 268, 40 S.Ct. 534, 64 L.Ed. 898; Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870; Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; Keaton v. Looney, 10 Cir., 111 F.2d 34. But the mere assertion of a claim does not ipso facto oust the court of jurisdiction to enter upon a preliminary inquiry to determine whether the bankrupt or some one acting for him had possession of the property at the time the petition was filed, whether the claim actually existed at that time, and whether it is real or merely colorable. Mueller v. Nugent, 184 U.S. 1, 15, 22 S.Ct. 269, 46 L.Ed. 405; Louisville Trust Co. v. Comingor, 184 U.S. 18, 25, 22 S.Ct. 293, 46 L.Ed. 413; Taubel-Scott-Kitzmiller Co., Inc. v. Fox, supra; May v. Henderson, supra; Harrison v. Chamberlin, supra; Keaton v. Looney, supra.

Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, provides that a court of bankruptcy may upon application

require any designated person, including the bankrupt and his wife, to appear and submit to examination respecting the acts, conduct, or property of the bankrupt; and that the wife may be examined only in respect to business which she transacted or to which she was a party, and to ascertain whether she had transacted or was a party to any business of the bankrupt. The general purpose of the statute is to provide a method for a searching inquiry into the condition of the estate of the bankrupt, to assist in discovering and collecting the assets, and to develop facts and circumstances which bear upon the question of discharge. Cameron v. United States, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 488; In re Samuels, 2 Cir., 215 F. 845; Ulmer v. United States, 6 Cir., 219 F. 641; In re Youroveta Home & Foreign Trade Co., 2 Cir., 288 F. 507.

In order to attain these ends a reasonably wide latitude of inquiry should be allowed in the examination of persons closely associated with the bankrupt in business, or otherwise. Yet the examination cannot extend to dealings, transactions or issues over which the court lacks jurisdiction; unreasonable discursiveness should not be permitted; and frivolous or prolix examination should be stopped. The statute imposes a special limitation upon the scope of the examination of the wife. Inquiry can be made of her only in respect to dealings with the bankrupt which she transacted or to which she was a party. But a like reasonable latitude should be allowed in the examination of her respecting transactions of that kind.

■ The bankruptcy court clearly had jurisdiction to make a preliminary inquiry into the status and ownership of the bonds which had belonged to the bankrupt and which passed from him into the custody of appellant in order to determine whether they belonged to the estate, whether the estate had some interest in them, whether the adverse claim of appellant was substantial or merely fictitious or colorable, and whether a plenary suit should be instituted for their recovery in kind or value. In the course of that inquiry, appellant offered herself as a witness and testified that, after withdrawing the bonds from the bank, she kept them until she delivered them to her brother for disposition, that he delivered the proceeds of their disposition to her, and that she used the proceeds to defray necessary expenses of herself and husband. The evidence was material. Ul-

mer v. United States, supra. Its falsity was a question for the jury.

■ The remaining contention advanced is that the court erred in excluding certain tendered testimony tending to show that the husband of appellant was solvent in 1933, the time it is contended he gave the bonds to her. The essence of the charge laid in the indictment was the willful falsity of the testimony of appellant in respect to the delivery of the bonds to her brother for disposition, to the receipt from him of money representing the proceeds of their disposition, and to the use made of such money. According to her testimony, all of that occurred after the withdrawal of the bonds in January, 1937. The solvency of the bankrupt in 1933 was immaterial.

The judgment is affirmed.